**FRED H. WEIGEL v. MARIE A. WIENER and H. CLARK WIENER, her husband.**

5 So. (2nd) 447                                    Division B
January 6, 1942

Metcalf & Finch, for appellant.
William Q. Cain, for appellee.

THOMAS, J.:

The chancellor dismissed the bill of complaint filed by the plaintiff seeking relief for himself and his daughters because of circumstances arising after the execution by him and his former wife of an agreement in contemplation of divorce.

We will not give the substance of the entire agreement because only certain phases of it need be considered in order to dispose of the present litigation. The plaintiff and his then wife, who were at the time separated, but not divorced, agreed that two parcels of land owned by them as estates by the entirety should be conveyed to the wife and to effect transfer of the title they signed deeds to a third person who executed conveyances to the wife and the four instruments were placed in escrow to be delivered to the latter "immediately after rendition of final decree of divorce in favor of either of the parties." Custody of the two minor children was placed in the mother and the father was to pay the sum of twenty dollars per month for their support, maintenance and education. The plaintiff was to become the sole owner of a florist business theretofore conducted by the parties known as "Weigel's House of Flowers" and it was stipulated that the wife should not at any time in the future maintain any place for the sale of flowers in the town of Palm Beach "under the name of 'Weigel' or any other name of which the word 'Weigel' is a part."

The divorce was granted and the deeds delivered.

The following year the plaintiff brought the suit culminating in the order of dismissal which we are asked to review. He, alone, was plaintiff and the only defendants were his former wife and her present husband. In his pleading he set out the agreement which we have briefly analyzed and gave circumstances that were not gleaned from it and facts which arose after its execution. From the bill we learn that one of the parcels, to which we will refer as Parcel A, was occupied by the plaintiff, and his former wife and the children as a homestead, while the other, which we will

call, for simplicity, Parcel B, was acreage located near the airport at West Palm Beach. It was averred that the title to the lands was transferred under the settlement in order to provide support for the children and that it was contemplated by the parties that the property should be used for that purpose. The charge was made that the deeds attempting to convey the title to Parcel A were totally void because not executed in accordance with the provisions of the constitution and the decisions of this court with reference to the transfer of the title to homestead property.

The plaintiff further alleged that his former wife who had subsequently married had borrowed a sum of money, giving as security for its payment a mortgage on Parcel A and had also given a mortgage on Parcel B to secure another loan. It was averred, too, that she had agreed to sell Parcel B to the United States government and would receive a substantial amount of money as a purchase price none of which, so the plaintiff charged, would benefit the two children as contemplated by the property settlement.

The plaintiff charged that the money secured by the two mortgages had been used by the defendants to establish a retail store for the sale of flowers under the name "White Palms Florist" and that in advertising the business cards had been circulated bearing the names "Mr. and Mrs. H. Clark Wiener" and the notation "Mrs. Wiener was formerly associated with Weigel's House of Flowers" which, it is charged, violated the part of the contract providing that the name of Weigel should not be used in any similar business by the defendant Marie A. Wiener.

As further indication that that part of the agreement was being violated the plaintiff charged that the

telephone of the florist shop operated by the defendants was listed in the directory in the name of Marie C. Weigel, thus placing it immediately under the name of the plaintiff's business and that this telephone was actually located in the White Palms Florist shop.

Thus, it will be seen there are three aspects of the case: the first concerning the transfer of the homestead property; the second, the conveyance of the so-called acreage and the third, the alleged violation of the agreement not to enter a competitive business where the surname of the plaintiff was used. We will deal with them in that order.

It was the contention of the plaintiff, that upon establishing the factual situation which we have outlined in giving summaries of the agreement and bill of complaint, the court should: (1) appoint a trustee to take possession of any moneys paid for the purchase of Parcel B and use it for the support and maintenance of the children, thereby placing upon the property settlement the construction that the deeds were delivered for that purpose; (2) declare the deeds conveying Parcel A null and void and decree that the mortgage thereon be decreed a lien on the one-half interest of Marie A. Wiener in that property and that the plaintiff's one-half interest be adjudicated the property of the minor children and, (3) issue a temporary restraining order enjoining the defendants from circulating the cards which we have described because their distribution violated the provisions of the contract with reference to entering a similar business and using the name "Weigel."

For us to hold that the bill contained equity to support the prayer for the appointment of a trustee of Parcel B it would be necessary for us to decide that it

was contemplated by the parties when the agreement was executed that Parcel B was transferred to the defendant Marie A. Wiener in order that the income from it and the proceeds from the sale of it should be used in the maintenance and support of the minor children. Counsel for the plaintiff has cited the recognized rule that parol evidence may be used to ascertain the true meaning of a written instrument so long as it does not contradict it or alter its terms, but we cannot agree that there is any need to resort to that means in order fully to understand that part of the contract dealing with Parcel B. In the preamble it is stated that this property was acquired by the "joint personal efforts and the investment of their joint personal earnings" and obviously it was the purpose of both parties to divide what they had accumulated. In this manner "sole and absolute title," to quote the contract, of all property transferred to the wife, including Parcel B, became vested in her and we find that the same language was employed with reference to the business which was retained by the husband, id est, he became "sole and absolute owner" of it. From the phraseology used by the parties it was unmistakably their intention that each should have unrestricted title to the property received.

In interpreting these provisions with reference to the estate that each was to receive it is important to compare with them the unambiguous proviso that the father of the children should pay to their mother a definite sum for "their support, maintenance and education." Thus, in analyzing the entire agreement it is patent that there was no doubt in their minds as to the distribution of their accumulated holdings and that independent allotments were made to the father

and to the mother and that separate and distinct provision was made for the two children. From a study of the context of the agreement we conclude that the language is so plain that there is no reason to resort to parol evidence to determine its true meaning or the motive for its execution.

What we have written with reference to the purpose in transferring Parcel B applies to Parcel A also, but the same relief is not asked and treatment of this aspect of the case involves some questions which are not relevant to the consideration of the other tract. No trustee is sought to receive the proceeds from that land but it is claimed that the undivided one-half interest of the plaintiff is "in fact the property of the plaintiff's two daughters"; that they have the right to use and occupy it; and that all of this was "within the contemplation of . . . the . . . contract." In dealing with this contention there is no need to add to what we have already said with reference to the plan of the parties when the instrument was executed. There is, in our opinion, no foundation for such a claim.

The plaintiff prayed that the court declare the deeds conveying this particular piece of land null and void and, further, that the indebtedness evidenced by the mortgage on it be therefore decreed a lien only on the one-half interest of the former wife, the defendant Marie A. Wiener. Strangely, although such an order would materially affect the security the mortgagee is not a party to the suit and the name of the mortgagee and the terms of the mortgage cannot be learned from the bill of complaint. It is obvious that this relief could not be granted in the absence of a party whose interest would be so materially affected by decreasing to one-half the amount of the security even if the

plaintiff were correct in his position that the deeds were invalid.

Another odd feature of the prayer in regard to Parcel A is that the plaintiff, who sued in his individual capacity, sought no relief whatever for himself. In the brief filed by his counsel there is the significant statement: "in fact, he does not want any interest in the property." We repeat that his prayer, so far as it concerns this tract, is that an undivided one-half interest in it be declared the property of the minor children.

The argument in support of this theory is that this particular property was occupied as the homestead and that the deeds were, therefore, ineffectual inasmuch as they purported to convey title from the husband and wife to the wife through an intermediary without consideration.

It is useless to adjudicate the homestead character of the property because a study of the agreement leaves no doubt that a consideration was present and at the time the deeds became effective the parties were unmarried. It will be remembered that the deeds were placed in escrow to be delivered after the decree of divorce had been granted. They, therefore, became effective upon delivery (Houston v. Adams, 85 Fla. 291, 95 So. 859) which, in turn, was conditioned upon the entry of a decree of divorce. At the time of the actual delivery, the parties being no longer husband and wife, the property had lost its character as an estate by entirety and had become one of tenancy in common (Strauss v. Strauss, 148 Fla. 23, 3 So. (2nd) 727).

The execution of deeds by the wife as grantor before a divorce, hence delivery, could amount to no

more than surplusage. Although a deed from a husband and wife to the wife through a third person conveying homestead property, without consideration, would be invalid the particular transaction here complained about is not subject to that infirmity. In the circumstances alleged there was merely a transfer of title from the holder of an undivided one-half interest to the owner of the remaining interest.

After the receipt of the deed and the vesting of title the grantee could encumber the property if she wished.

Although, as we have observed, necessary parties are not present so that the validity of the mortgage may be properly adjudicated, nevertheless, we have dealt with the above feature of the controversy because of the direct prayer that it be declared void. However we are unable, assuming that all necessary parties were before the court, to comprehend what interest the two daughters have in the property, whether it was properly conveyed or title to an undivided one-half interest is still vested in the plaintiff.

We have carefully compared the agreement and the allegations of the bill of complaint dealing with the supposed violation of the promise of the wife not to engage in the sale of flowers "under the name of 'Weigel' or other title where that name is a part." We consider it apparent that the card distributed by the defendant, bearing the notation which we gave at the outset is not a violation of that stipulation. The allegations in this regard were totally insufficient to support an injunction.

Having the views that we have expressed we conclude that the chancellor was eminently correct when he dismissed the bill of complaint.

BROWN, C. J., TERRELL and CHAPMAN, JJ., concur.