**JOHNSON, et al v. JOHNSON, et al.**

Circuit Court, Pinellas County.

October 2, 1952.

200

Nichols & Whitehurst, Clearwater, for plaintiffs.

Herman W. Goldner of Goldner, Cramer & Smith, St. Petersburg, for defendants.

VICTOR O. WEHLE, Circuit Judge.

This is a suit by William M. Johnson, Jr. and Barbara Joyce Johnson Hancock joined by her husband Frank Hancock, against Blanche P. Johnson, Linwood P. Johnson, Ann Gail Johnson and R. G. Chalfant, as administrator c. t. a., to set aside the devise of certain real property on the ground that it is homestead property.

The plaintiffs William M. Johnson, Jr. and Barbara Joyce Johnson Hancock are two adult children of the deceased, William M. Johnson, Sr., by a former marriage. The defendant Blanche P. Johnson is the divorced second wife of the decedent; and the defendants Linwood P. Johnson and Ann Gail Johnson are the children of the deceased and Blanche P. Johnson. Plaintiffs are suing as heirs of the decedent, William M. Johnson,

Sr., to impress with homestead character certain real property devised by decedent to the defendants.

Sometime prior to March 1943, decedent made a will devising real estate at 1207 North Fort Harrison Avenue, in Clearwater, Florida, to Blanche P. Johnson, his wife, for life, remainder in fee to Linwood P. and Ann Gail Johnson, who were then minors. These premises had been the homeplace of the testator and Blanche P. Johnson and their two children, and were held by the deceased and Blanche Johnson as tenants by the entireties.

On March 31, 1943, Blanche Johnson obtained a decree of divorce a vinculo matrimonii from the decedent, in which she was awarded sole occupancy of the premises in question. The decedent was required by the decree to pay alimony to Mrs. Johnson and to provide periodic sums for the support of their two minor children.

Sometime early in March, 1943, decedent left the premises at 1207 North Fort Harrison Avenue and took up his abode elsewhere in the city of Clearwater, taking all his personal effects with him, excepting a trunk full of papers which he left in the garage behind the house. Several months later, to-wit, sometime in July, 1943, the late Mr. Johnson returned to the premises in question, after Mrs. Johnson had been prevailed upon by certain acquaintances of the decedent to receive him back into the house. It appears that there was an acute housing shortage in Clearwater during the period involved and Mr. Johnson, having been forced to vacate the furnished rooms in which he had been residing, had difficulty in finding lodgings. Hence, he returned to the premises in question as a tenant, paying Mrs. Johnson the sum of fifty dollars monthly for the occupancy of one room and one meal a day. He took his meals by himself, and was absent from the house a substantial part of each day, frequently not returning until quite late in the evening.

The decedent lived in the premises, continuing to pay rent and occupying only one room until his death on December 16, 1944. At no time during his tenancy from July, 1943 to December, 1944 did he supervise the upbringing of his two minor children, Linwood P. and Ann Gail Johnson, nor did he acknowledge any obligation to them save the monthly sums which he paid over to Blanche Johnson for their support pursuant to the divorce decree of March 31, 1943.

There are two questions raised by the foregoing statement of facts—(1) Can a divorced man be the head of a family for the purposes of testamentary transfer when the decree of divorce compels him to pay periodic sums for the support of his erstwhile wife and minor children? and (2) Assuming the premises continued to be homestead after the divorce, was there an abandonment?

The first question is not free from difficulty. Our Supreme Court has never squarely decided the point, although it has had several occasions to discuss the effect of divorce on homestead, generally, where an inter vivos transfer was in issue. See Jordan v. Jordan, 132 So. 466; Weigel v. Wiener, 5 So. 2d 447; Moore v. Hunter, 13 So. 2d 909. The Supreme Court of Florida has also had before it the question whether or not a divorced man paying periodic sums to his former spouse and minor children for their support may be the head of a family for purposes of immunity from creditors' claims. See Osceola Fertilizer Co. v. Sauls, 123 So. 780; Larsen v. Austin, 54 So. 2d 63.

Counsel for plaintiffs urge upon us the application of Osceola Fertilizer Co. v. Sauls, supra. We cannot agree with this contention. The Supreme Court in that case held that the residence of a man who was paying alimony to his divorced wife and support sums for his minor child was homestead property and not subject to levy by a judgment creditor on the theory that the judgment debtor was the "head of a family". This rule is not applicable to the present case for two fundamental reasons: first, the court stated that a man under a duty to support those standing in the relation of wife and child to him should not be embarrassed in his efforts to provide for the support of such dependents; and second, the court expressly indicated that the judgment debtor could, upon order of the court, have custody of the minor child awarded to him under certain circumstances. Thus, he could become in fact, as well as in law, the head of a family.

Neither one of these factors applies in the instant case. The decedent was never embarrassed in his efforts to provide for those standing in the relation of wife and children to him. At the time the testamentary transfer took effect, namely the date of the testator's death, there was no longer a possibility William Johnson, Sr. might become the head of a family. During his life, no change of custody of his two minor chil-

dren, had, in fact, been made. Moreover, the Supreme Court, in the Sauls case, was clearly trying to protect the minor child and its mother from being deprived of their support; and in so doing the law of homestead was stretched to the extreme. The Sauls case represents the farthest point to which this court will extend homestead exemption.

This is borne out by the reasoning of the Court in Weigel v. Wiener, supra. In that case plaintiff and his wife were separated. Before divorce plaintiff conveyed the homestead premises to his wife in escrow, to be delivered to her after rendition of the divorce decree. The divorce was later granted and incident to it custody of the two minor children was given the wife and the husband was to pay twenty dollars a month for their support. The premises were transferred to the wife. Subsequently, the husband sued to have this conveyance set aside, claiming homestead. The court rejected this contention, saying at p. 450 of 5 So. 2d:

> It is useless to adjudicate the homestead character of the property because a study of the agreement leaves no doubt that a consideration was present and at the time the deed became effective the parties were unmarried. It will be remembered that the deeds were placed in escrow to be delivered after the decree of divorce had been granted. They, therefore, became effective upon delivery . . . which, in turn, was conditioned upon the entry of a decree of divorce. At the time of the actual delivery, the parties being no longer husband and wife, the property had lost its character as an estate by entirety and had become one of tenancy in common.

> . . . Although a deed from a husband and wife to the wife through a third person conveying homestead property, without consideration, would be invalid, the particular transaction here complained about is not subject to that infirmity. In the circumstances alleged there was merely a transfer of title from the holder of an undivided one-half interest to the owner of the remaining interest.

Regarding the homestead interest of the two minor children, the court said, at p. 450 of 5 So. 2d:

> . . . However, we are unable, assuming that all necessary parties were before the court, to comprehend what interest the two daughters have in the property, whether it was properly conveyed or title to an undivided one-half interest is still vested in the plaintiff.

The foregoing indicates that our Supreme Court upheld the transfer not only because it was such an inter vivos alienation as is permitted by article 10, section 4 of the Florida constitution, but for the more fundamental reason that the property had lost its homestead character at the time of the transfer

The family, of which the husband and father was an integral part, was dissolved by the time the transfer took effect. No family then existed of which he could be the head. The case at bar fits four-square with the reasoning in the Weigel case, the only distinction being that, in the one instance the transfer was testamentary, while, in the other, it was inter vivos.

Assuming, arguendo, that the deceased was still the head of a family in spite of the divorce in March, 1943, the facts show that the decedent abandoned the homestead when he removed himself and all his belongings several weeks prior to the divorce decree, and took up his abode elsewhere. His subsequent return did not vitiate this abandonment, as it was under extraordinary circumstances and his occupancy was of such a character as to negate the proposition that he looked upon the premises as his place of permanent abode. He occupied only one room in the house paying rent therefor. He ate one meal a day in the house, which he took by himself, not in company with the rest of his erstwhile family. He was absent the greater part of each day, frequently not returning until very late at night. Apparently, he gave no thought to the upbringing of his children, other than the monthly sums which he was required by the divorce decree to provide for their support.

It is well-settled law in this state that a permanent abandonment of the homestead as a bona fide home and permanent residence strips it of its homestead character. Lanier v. Lanier (Fla.), 116 So. 867; Miller v. West Palm Beach Atlantic National Bank, et al. (Fla.), 194 So. 230; Barlow v. Barlow (Fla.), 23 So. 2d 723.

Judgment for defendants, together with their costs herein expended.