In re The HARTFORD SALES
PRACTICES LITIGATION.

Liane Force, Lonnie Griffin, Nick Marino, and Otto Ladish, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

ITT Hartford Life and Annuity Insurance Company and Hartford Life Insurance Company, Defendants.

Nos. 97–MD–1204, 97–1619/RHK/JMM.

United States District Court,
D. Minnesota.

June 10, 1999.

Jack L. Chestnut, Karl L. Cambronne, Jeffrey D. Bores, Becky L. Erickson, Chestnut & Cambronne, Minneapolis, MN, Melvyn I. Weiss, Barry A. Weprin, Brad N. Friedman, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, John J. Stoia, Jr., Theodore J. Pintar, JoBeth Halper, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, Michael D. Craig, Joann B. Harms, Schiffrin, Craig & Barroway, Buffalo Grove, IL, Ronald R. Parry, Arnzen, Parry & Wentz, Covington, KY, W. Christian Hoyer, John R. Newcomer, James, Hoyer, Newcomer, Forizes & Smiljanich, Tampa, FL, Andrew S. Friedman, Francis J. Balint, Jr., Bonnett, Fairbourn, Friedman, & Balint, Phoenix, Arizona, H. Sullivan Bunch, Bonnett, Fairbourn, Friedman, & Balint, Signal Mountain, Tennessee, Stephen L. Hubbard, Cantilo, Maisel & Hubbard, Dallas, TX, Allyn Z. Lite, Bruce D. Greenberg, Goldstein, Lite, & DePalma, Newark, NJ, Andrew W. Hutton, Hutton & Hutton, Wichita, KS, William J. Dutel, Law Offices of William J. Dutel, Covington, LA, for plaintiffs.

Gary J. Haugen, Richard A. Kempf, Maslon, Edelman, Borman & Brand, Minneapolis, MN, Barry A. Chasnoff, David A. Jones, Geoffrey R. Unger, Roberta J. Sharp, Akin, Gump, Strauss, Hauer & Feld, San Antonio, TX, for defendants.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

This case is part of a multidistrict litigation challenging several of the sales practices of Defendants ITT Hartford Life and Annuity Insurance Company ("IHLA") and Hartford Life Insurance Company ("HLIC") (collectively, "ITT Hartford" or the "Defendants"). The Plaintiffs brought a multitude of claims against ITT Hartford based on three separate alleged sales schemes: "the vanishing premium scheme," "the churning sales scheme," and "the retirement/investment plans scheme." On December 16, 1997, the Judicial Panel on Multidistrict Litigation transferred several similar actions against the same Defendants to this Court for coordinated and consolidated pretrial proceedings. (*See In re Hartford Sales Practice Litig.*, Civ. No. 97–MD–1204, Doc. No. 1 (transfer order).)

By Memorandum Opinion and Order dated January 26, 1998, this Court dismissed the Plaintiffs' common-law claims for fraud, fraudulent concealment, deceit, constructive fraud, negligent misrepresentation, and negligence, as well as the Plaintiffs' claims brought under the Minnesota False Statement in Advertising Act. *See Force v. ITT Hartford Life & Annuity Ins. Co.*, 4 F.Supp.2d 843, 860 (D.Minn.1998) [hereinafter, "*Force I* "]. In *Force I*, the Court denied the Defendants' motion to dismiss the Plaintiffs' common-law claims for fraudulent inducement, breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and for declaratory and injunctive relief and reformation, as well as claims brought under the Minnesota Deceptive Trade Practices Act, Minn.Stat. §§ 325D.43 to 325D.48, and the Minnesota Prevention of Consumer Fraud Act, Minn.Stat. §§ 325F.68 to 325F.70. *See id.* Currently before the Court are: (1) the Defendants' Motion to Strike the Affidavit of Regina LaPolla; (2) the Defendants' Motion for Partial Summary Judgment on the Plaintiffs' claims for breach of contract; and (3) the Plaintiffs' Motion for Class Certification. For the reasons set forth below, the Court will grant the Defendants' Motion to Strike the text of the LaPolla Affidavit (but will deny the Motion with regard to the exhibits attached thereto), deny

the Defendants' Motion for Partial Summary Judgment on the Plaintiffs' claims for breach of contract, and deny the Plaintiffs' Motion for Class Certification.

## Background

The Plaintiffs generally allege that the Defendants engaged in—and encouraged their sales agents to engage in—several false and misleading sales practices beginning in the 1980s, in order to sell more life insurance policies in the face of increasing competition from other investment vehicles offering higher rates of return. The specifics of the Defendants' alleged sales schemes and the individual experiences of each of the named Plaintiffs are set forth in detail in the Court's *January 26, 1998 Memorandum Opinion and Order. See Force I,* 4 F.Supp.2d at 846–49. Generally, however, each of the Plaintiffs alleges that, because of the Defendants' sales practices, they were misled by the Defendants' sales agents into buying life insurance that they did not need and that did not perform as the Defendants' agents had represented.

Plaintiffs Liane Force ("Force") and Nick Marino ("Marino") allege that they were victims of ITT Hartford's "churning" sales scheme, by which ITT Hartford sales agents convinced them to cash in existing policies for new ones while not advising them of the disadvantages of such a move, including the fees involved and the possibility of increased premiums. Force, who was paying monthly premiums of $12.50, sold her existing $2,000 life insurance policy to buy a $6,000 policy from an IHLA sales agent, after the agent told her that she would be able to continue paying premiums in the same amount. (*See* Force Dep. at 33–36.) Force's premiums escalated, however, to $30 and then to $40 per month, at which point she ceased making payments. (*See id.* at 93.) Force testified that, if she had known that there was a possibility of her premiums increasing, she would not have traded in her existing policy for a new one. (*See id.* at 68–69.) Marino bought a life insurance policy from IHLA in 1974. (*See* N. Marino Dep. at 9.) In 1987, after an IHLA sales agent told Marino that he could trade in his existing fixed-premium policy for another one with a fixed premium,

he did so. (*See id.* at 9–10, 51–52.) After a few years, however, IHLA notified Marino that the premium payments on the new policy would be increasing.

Plaintiff Lonnie Griffin ("Griffin") alleges that he was a victim of the "retirement/investment plans" sales scheme, by which ITT Hartford sales agents deceptively referred to life insurance policies as retirement plans or investment plans, without telling potential customers of the disadvantages of buying life insurance relative to these other investment vehicles. Griffin alleges that he purchased a life insurance policy after an IHLA sales agent explained the policy as a retirement plan. (Griffin Dep. at 87–89.) Griffin testified that he bought the policy because of a belief, based on what the sales agent had told him, that if he were to pay $ $100 every month until his retirement in approximately 20 years, that he would receive $200,000 upon his retirement. (*See id.* at 89–91.) The agent showed Griffin documents on IHLA stationery showing the accumulation of money over the next 20 years, which were based on an assumption that the money would continue to accrue interest at approximately 9 to 10 per cent annually. (*See id.* at 91–92, 105–06, 110.) Several years later, when representatives of another company reviewed Griffin's IHLA policy, they informed Griffin that he had purchased life insurance rather than a retirement plan, and that the projected accumulation of his funds in the policy had been overstated. (*See id.* at 145–52.)

Finally, Plaintiff Otto Ladish ("Ladish") alleges that he was a victim of the "vanishing premium" sales scheme, in which ITT Hartford sales agents represented to him that he would be required to make only six premium payments for his life insurance policy, after which the interest on the accumulated money would pay for all remaining premiums. Ladish alleges that these predictions were made based on interest rate projections that ITT Hartford knew were unrealistically high. Ladish purchased a life insurance policy in 1991 after being told that he could make six premium payments of $8,531 each and then receive a policy worth approximately $213,-000. (*See* Ladish Dep. at 66–68.) The sales agent showed Ladish an illustration purport-

ing to demonstrate that after a total of six premium payments, his policy would be fully paid. (*See id.* at 68.) In 1996, after receiving a document about his policy that he did not understand, Ladish called another agency to inquire about the document. (*See id.* at 75.) The person with whom Ladish spoke informed him that he would "never have that policy paid for at the end of [his] six payments." (*Id.* at 76.)

After orally agreeing with the respective sales agents to purchase the life insurance policies, each of the named Plaintiffs received a written policy. Each of these written policies contained provisions either identical or substantively similar to the following three provisions:

> (1) "THE ENTIRE CONTRACT— *Your* policy is a legal contract between *you* and [*ITT Hartford.*] It consists of this policy, a copy of the application, and any attached riders, benefit provisions or endorsements." [1]

> . . . .

> (2) "MODIFICATION OR CHANGE— *Your* policy may be modified only by *our* written agreement signed by an executive officer. No agent or other person has the authority to change *your* policy or waive any of its terms or provision." [2]

> . . . .

> (3) "EXCESS INTEREST—We may declare payment of interest in excess of the guaranteed rate from time to time. Payment of excess interest is not guaranteed. We may declare different rates of excess interest payable on premiums accumulated at different times." [3]

Notwithstanding these written provisions in each of their policies, the Plaintiffs contend that exceptions to the parol evidence rule apply to the instant cases and allow the introduction of extrinsic evidence of oral statements and promises made by the sales agents to them prior to issuance of the written policies. The Plaintiffs do not claim that the Defendants breached the contracts *as written,* but that the Defendants breached the oral promises made between the Plaintiffs and the Defendants' sales agents.

## Analysis

### I. Defendants' Motion to Strike LaPolla Affidavit

■ The first of the three Motions currently before the Court is the Defendants' Motion to Strike the LaPolla Affidavit.[4] The LaPolla Affidavit was submitted in support of the Plaintiffs' Motion for Class Certification, and has 54 exhibits attached to it. The Defendants object to the argumentative nature of the narrative portion of the Affidavit, but not to the inclusion of exhibits that have been produced by the Defendants. (*See* Defs.' Reply in Supp. of their Mot. to Strike LaPolla Aff. at 3 n. 1 ("The purpose of the Motion is not to prevent the Court from reviewing documents Defendants produced, but to strike Ms. LaPolla's prejudicial and improper interpretation of those documents.").) In their supporting memorandum, the Defendants undertake a paragraph-by-paragraph analysis of the LaPolla Affidavit explaining how, in their view, her descriptions of the documents submitted therewith are speculative, argumentative, and prejudicial, and why, therefore, those descriptions should be stricken.

---

1. Kolthoff Aff.Ex. D at HART00030 (Griffin 1989 policy); *see also* Kolthoff Aff.Ex. B at HART00007 (Griffin 1982 policy); Kolthoff Aff. Ex. F at HART00053 (Force policy); Kolthoff Aff.Ex. H at HART00077 (Marino policy); Kolthoff Aff.Ex. J at HART00131 (Ladish policy).

2. Kolthoff Aff.Ex. D at HART00030 (Griffin 1989 policy); *see also* Kolthoff Aff.Ex. B at HART00007 (Griffin 1982 policy); Kolthoff Aff. Ex. F at HART00053 (Force policy); Kolthoff Aff.Ex. H at HART00077 (Marino policy); Kolthoff Aff.Ex. J at HART00131 (Ladish policy).

3. Kolthoff Aff.Ex. D at HART00032 (Griffin 1989 policy); *see also* Kolthoff Aff.Ex. B at HART00014 (Griffin 1982 policy); Kolthoff Aff. Ex. F at HART00055 (Force policy); Kolthoff Aff.Ex. H at HART00079 (Marino policy); Kolthoff Aff.Ex. J at HART00129 (Ladish policy) ("We may pay or credit excess interest of such amount and in such manner as we determine.").

4. The Plaintiffs' attorney, Regina LaPolla, has submitted three affidavits in connection with the Motions currently before the Court. The affidavit that is the subject of this Motion is the two-volume LaPolla Affidavit dated January 8, 1999.

The Plaintiffs respond by arguing that the affidavit is not argumentative and that a court does not strictly apply the Federal Rules of Evidence to materials submitted in support of a motion for class certification under Rule 23. Because the Plaintiffs' first contention is incorrect, and the Court finds that the narrative portion of the LaPolla Affidavit is replete with improper argument, the Court will grant the Defendants' Motion to Strike that part of the LaPolla Affidavit consisting of narrative descriptions of the attached exhibits. The Court, however, will admit the exhibits attached to the Affidavit, so that they may be considered by the Court in resolving the instant Motion for Class Certification.

The Plaintiffs argue that the LaPolla Affidavit is not improper argument and that "[t]he language in the Affidavit is neutral and merely summarizes the content of certain documents." (Pls.' Mem. in Resp. to Defs.' Mot. to Strike LaPolla Aff. at 9.) The Court concludes, however, that this characterization is inaccurate. Throughout the Affidavit, La-Polla describes the attached exhibits in a light that is very damaging to the Defendants, referring to the Defendants' "cavalier attitude" toward regulators (¶ 11), recognition that consumers were "easy targets" for churning (¶ 13), actuarial assumptions "with no basis in fact" (¶ 22), and "egregious[ ]" training of ITT Hartford's agents "to misrepresent the true nature of the product being sold and to outright lie when asked directly" about the nature of the product. (¶ 33.) The Defendants are correct that the statements made by LaPolla are not only outside of her firsthand knowledge but also belong in a memorandum rather than an affidavit. (See Def.'s Reply Mem. at 2.) Accordingly, the Court will grant the Motion to Strike with regard to the descriptive portions of the La-Polla Affidavit.

With regard to the exhibits attached to the LaPolla Affidavit, the Defendants have clarified in their reply memorandum and during oral argument on this matter that their Motion to Strike does not encompass those documents that were produced by the Defendants and attached to the LaPolla Affidavit. During oral argument, the Court raised the issue of whether the newspaper articles could appropriately be considered by the Court on the instant Motion for Class Certification. The Court now concludes that consideration of such material at this stage is appropriate. On a motion for class certification, the evidentiary rules are not strictly applied and courts will consider evidence that may not be admissible at trial. See, e.g., Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974) (describing a court's determination of class certification as based on "tentative findings, made in the absence of established safeguards" and describing a class certification procedure as "of necessity ... not accompanied by the traditional rules and procedures applicable to civil trials"); Paxton v. Union Nat'l Bank, 688 F.2d 552, 562 n. 14 (8th Cir.1982) ("Hearsay testimony may be admitted to demonstrate typicality.") (citing Donaldson v. Pillsbury Co., 554 F.2d 825, 830–31 n. 3 (8th Cir.1977)); Thompson v. Board of Educ. of the Romeo Community Sch., 71 F.R.D. 398, 401 n. 2 (W.D.Mich.1976) (relying on Eisen and concluding that evidence that may not be admissible at trial could be introduced and considered "on such preliminary matters as class certification," especially where the evidence was not challenged as inaccurate but only as lacking in certain foundational requirements), rev'd on other grounds, 709 F.2d 1200 (6th Cir.1983). Accordingly, the Court need not address the ultimate admissibility of the Plaintiffs' proffered exhibits at this stage, but has considered them when necessary for resolution of the Plaintiffs' Motion for Class Certification.

**II. Defendants' Motion for Partial Summary Judgment**

The Defendants advance only one argument in support of their Motion for Partial Summary Judgment on the Plaintiffs' claims for breach of contract: they argue that they are entitled to summary judgment on the Plaintiffs' claim for breach of contract because each of the Plaintiffs' written policies contains a merger clause which renders it an integrated contract, and the parol evidence rule bars the use of parol evidence to establish a breach of contract where there is a written, fully integrated contract. The Plain-

tiffs argue that the parol evidence rule has various exceptions that would allow them to introduce evidence of the oral representations of the Defendants' sales agents and thereby establish a breach of contract. For the reasons set forth below, the Court will deny the Defendants' Motion for Partial Summary Judgment on the Plaintiffs' claim for breach of contract.

### 1. Standard of Review

Summary judgment is warranted if, "after viewing the evidence in the light most favorable to the nonmoving party, there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *FDIC v. Bell,* 106 F.3d 258, 263 (8th Cir.1997). After the movant has satisfied its burden of identifying those portions of the record that show the absence of any genuine issue of material fact, the nonmoving party may not rest upon the allegations contained in its pleadings, but "rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Chism v. W.R. Grace & Co.,* 158 F.3d 988, 990 (8th Cir.1998). To survive a motion for summary judgment, the nonmoving party must support its case with "more than a scintilla of evidence." *Bell,* 106 F.3d at 263 (quotation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quotation omitted).

On a motion for summary judgment, the court does not weigh facts or evaluate the credibility of affidavits and other evidence. The nonmovant cannot, however, avoid summary judgment in favor of the movant merely by pointing to some alleged factual dispute between the parties. Instead, any fact alleged to be in dispute must be "outcome determinative under prevailing law," that is,

it must be material to an essential element of the specific theory of recovery at issue. *See Get Away Club, Inc. v. Coleman,* 969 F.2d 664, 666 (8th Cir.1992). Essentially, the court performs the threshold inquiry of determining whether there is a need for a trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### 2. Florida's Parol Evidence Rule

■ In *Force I,* the Court summarized the parol evidence rule as it has been interpreted by Florida courts:[5]

Florida's parol evidence rule bars claims arising out of prior extrinsic agreements that contradict the terms of a fully integrated agreement. *See In re Estate of Barry v. Lieberman,* 689 So.2d 1186, 1187 (Fla.Dist.Ct.App.1997). However, there are several exceptions to this broad doctrine, which allow a party to present evidence of prior extrinsic agreements even where a fully integrated agreement exists. While the Plaintiffs claim that several such exceptions apply in the instant case, the Court need only consider one: allegations of fraud. Florida courts have long recognized "the well-established rule that alleged fraudulent misrepresentations may be introduced into evidence to prove fraud notwithstanding a merger clause in a related contract." *Wilson v. Equitable Life Assurance Soc'y,* 622 So.2d 25, 27 (Fla. Dist.Ct.App.1993); *see also Nobles v. Citizens Mortgage Corp.,* 479 So.2d 822 (Fla. Dist.Ct.App.1985).

*Force I,* 4 F.Supp.2d at 854–55 (citations to the record omitted). In addition to this "fraud exception" to the parol evidence rule, Florida courts have allowed the admission of parol evidence in cases where: (1) the written contract is ambiguous, *see Royal Continental Hotels, Inc. v. Broward Vending, Inc.,* 404 So.2d 782, 783–84 (Fla.Dist.Ct.App.1981); (2) the extrinsic evidence does not contradict

---

5. The Plaintiffs contend that the substantive law of Florida does not govern the resolution of the Defendants' Motion. In *Force I,* however, the Court made a tentative determination, based in part on the lack of opposition by the Plaintiffs, that Florida's substantive law governed. *See Force I,* 4 F.Supp.2d at 850 ("The Court . . . will

generally apply Florida substantive law to the Plaintiffs' common law claims, but is constrained to do so only when that law differs materially from the substantive law of Minnesota."). To date, the Plaintiffs have offered no arguments to the contrary, and the Court, therefore, will continue to apply Florida substantive law.

the written contract, *see Weigel v. Wiener,* 149 Fla. 231, 236, 5 So.2d 447, 449 (1942); or (3) the written contract is not fully integrated, *see Outlaw v. McMichael,* 397 So.2d 1009, 1011 (Fla.Dist.Ct.App.1981).

Each of the Plaintiffs' written policies contains a clause that the Defendants argue constitutes a merger clause. If the Court were to conclude that the written policies were ambiguous, parol evidence would be admissible to resolve the ambiguities. *See Parkhill v. Minnesota Mut. Life Ins. Co.,* 995 F.Supp. 983 (D.Minn.1998) (analyzing the parol evidence rule under both Florida and Minnesota law). In *Parkhill,* a "vanishing premium" case, Judge Doty concluded that, because the written policies at issue did not specify the source of the premium payments, they were ambiguous and, therefore, evidence of the agents' oral representations on this issue was admissible to explain the intent of the parties and to support a claim for breach of contract. *Id.* at 989–90. Although this Court relies upon a different exception to the parol evidence rule in denying the Defendants' Motion for Partial Summary Judgment, the grounds relied upon by Judge Doty could well constitute a separate and independent ground for allowing the admission of parol evidence to support the Plaintiffs' claims for breach of contract. In the instant case, however, the Court finds that the Defendants' Motion for Summary Judgment must be denied because of the exception to the parol evidence rule allowing for the introduction of parol evidence in cases involving allegations of fraud in the making of a contract.

The Defendants argue that under the fraud exception to the parol evidence rule, parol evidence may be introduced only to prove fraudulent inducement, and not breach of contract. (*See* Defs.' Supp.Summ.J.Mem. at 4–5.) The Court disagrees, however, and determines that the fraud exception to the parol evidence rule allows the Plaintiffs to use parol evidence to support their claims for breach of contract.

The Defendants rely primarily on *Caplen v. The Guardian Life Insurance Company of America,* No. 96–8359–CIV–RYSKAMP (S.D.Fla. Oct.22, 1996) (attached as Ex. H to Unger Aff.) in support of their argument that, under Florida law, parol evidence cannot be used to support a claim for breach of contract. (*See* Defs.' Supp.Summ.J.Mem. at 5–7.) In *Caplen,* the plaintiff brought claims against a life insurance company based upon its sale to him of two "vanishing premium" policies. The court held that the language of the plaintiff's written insurance policy was unambiguous and, therefore, the plaintiff could not use the parol evidence rule to support his claim for breach of contract. *See id.* at 10–13. The court did not hold, however, that the plaintiff's claim for fraud in the inducement was similarly barred. *See id.* at 13–14. Although the Defendants argue that *Caplen* supports a conclusion that Florida courts would interpret the parol evidence rule as allowing claims for fraudulent inducement while not allowing claims for breach of contract, the Court finds this argument unconvincing. The court in *Caplen* dealt with the issue of the parol evidence rule in a footnote and without extensive analysis. *See id.* at 10 n. 5. Moreover, the court did not consider or even mention any of the various exceptions to the parol evidence rule, such as those at issue in the instant case.[6]

More instructive than *Caplen* are the Florida cases of *First National Bank v. Gay,* 694 So.2d 784 (Fla.Dist.Ct.App.1997) and *Florida Pottery Stores v. American National Bank,* 578 So.2d 801 (Fla.Dist.Ct.App.1991). In *Florida Pottery Stores,* the counterclaimant,

---

**6.** In *Mueller v. Hubbard Milling Co.,* 573 F.2d 1029, 1038 (8th Cir.1978), the Eighth Circuit, applying South Dakota's parol evidence rule, concluded that the parol evidence could not be used to prove a claim for breach of contract but only to prove fraud, either in the inducement or the execution of the contract. In *Mueller,* the court concluded:

> [I]t is well-established in South Dakota that parol evidence is admissible to prove fraud; in cases where fraud is proved, however, the

proper remedy is voiding the contract or damages for fraud, not recovery on the contract. While the parol evidence here is admissible to prove fraud, it remains inadmissible to prove breach of contract.

*Mueller,* 573 F.2d at 1037–38. *Mueller,* however, deals with South Dakota's parol evidence rule rather than Florida's, and Florida courts have interpreted that state's parol evidence rule differently.

Florida Pottery, alleged that it had sought a $650,000 loan from the counterdefendant, American National Bank. Because the bank's legal lending limit was $400,000, the bank loaned Florida Pottery that amount and agreed to subsequently loan it an additional $250,000. *See Florida Pottery Stores,* 578 So.2d at 802–03. The parties essentially agreed (and the trial court found) that the only written agreement between the parties dealt with the $400,000 loan. *Id.* Florida Pottery alleged, however, that the written agreement had merely been one part of a broader agreement between the parties to enter into a "package loan" of $650,000. *Id.* After the bank failed to secure the additional $250,000, Florida Pottery alleged that it had been left under-capitalized and sued the bank for breach of contract. *Id.* The trial court granted summary judgment in the bank's favor on Florida Pottery Stores's counterclaim against it, citing, *inter alia,* the parol evidence rule and the related doctrine of merger.[7] Upon review, the Florida District Court of Appeals reversed this ruling, holding that summary judgment on that basis was improper. The court noted that the trial court had "correctly determined that ... any agreement relating to participation for an amount in excess of $400,000 was oral...." *Id.* at 804. The court went on to explain, however, that although the trial court had correctly stated the general parameters of the parol evidence rule, "it did not take into account the exceptions which permit the use of parol evidence to demonstrate that the written contract was procured by fraud." *Id.* at 804–05 (citing *Nobles v. Citizens Mortgage Corp.,* 479 So.2d 822 (Fla.Dist.Ct.App.1985)). "It is also well established," continued the court, "that parol evidence is admissible to prove a contemporaneous oral agreement which induced the execution of a written contract." *Id.* (citing *Wise v. Quina,* 174 So.2d 590, 596 (Fla.Dist.Ct.App.1965) and *Furlong v. First Nat'l Bank,* 329 So.2d 406, 408 (Fla.Dist.Ct.App.1976)). Relying on Florida precedent interpreting that state's parol evidence rule and the fraud exception thereto, the *Florida Pottery Stores* court

concluded: "Because Florida Pottery's complaint clearly alleges that an oral agreement with [the bank] to secure participation was its inducement for taking the $400,000 loan, summary judgment [on Florida Pottery's breach of contract counterclaim] on the basis of merger was inappropriate." *Id.* at 805.

*First National Bank v. Gay* involved a dispute over a lease agreement, in which the lessee sought to introduce parol evidence that the lessor had represented to it that the previous tenant had the obligation to return the premises to its original condition prior to delivery of the property to the lessee. *Gay,* 694 So.2d at 786. When the property had not been returned to its original condition at that time, the lessee repudiated the lease and sued the lessor for breach of contract. *See id.* The lessor then counterclaimed for breach of contract, alleging that the lessee had breached the lease by failing to take possession of the property. *See id.* After a jury trial, judgment was entered in favor of the lessor. *See id.* The Florida District Court of Appeals reversed the judgment of the trial court, concluding, *inter alia,* that the trial court had erred in refusing to allow the lessee to present evidence of the lessor's oral representations prior to the signing of the lease that it would deliver the property to the lessee in its original condition. *See id.* at 787. Citing the same cases relied upon by *Florida Pottery Stores,* the *Gay* court concluded that: "One exception to the parol evidence rule allows the admission of an oral agreement which is shown by clear, precise, and indubitable evidence to establish a contemporaneous oral agreement which induced the execution of the written contract." *Id.*

It is significant that both *Florida Pottery Stores* and *Gay* dealt with claims of breach of contract, rather than fraudulent inducement or some other tort-based claim. ITT Hartford argues that, although parol evidence may be used to support a claim for fraudulent inducement, it may not be similarly used to support a claim for breach of contract. (Defs.' Reply Mem. at 4.) *Florida*

---

**7.** As the *Florida Pottery Stores* court explained, "merger is simply a specific application of the parol evidence rule which proscribes the use of extrinsic evidence to contradict, enlarge or modify the terms of a written instrument." *Florida Pottery Stores,* 578 So.2d at 804–05.

*Pottery Stores* and *Gay,* however, compel a different conclusion.[8]

Resolution of the Defendants' Motion for Partial Summary Judgment on the Plaintiffs' breach of contract claim turns on two questions: (1) whether parol evidence is admissible under any circumstances to prove a breach of contract and (2) if so, whether the circumstances of the instant case justify application of one of the exceptions to the parol evidence rule, thereby allowing the introduction of extrinsic evidence of the oral statements of the Defendants' sales agents. With regard to the first question, the Court concludes that *Florida Pottery Stores* and *Gay* demonstrate parol evidence may be used to prove a claim for breach of contract. With regard to the second question, it is clear to the Court that evidence of oral representations by ITT Hartford's sales agents to the Plaintiffs are admissible pursuant to the fraud exception to Florida's parol evidence rule. The Plaintiffs have alleged that they executed the contracts by which they purchased the Defendants' life insurance policies because—at least in part—of the contemporaneous oral agreements with the sales agents.

As noted above, the only argument advanced by ITT Hartford in support of its Motion for Partial Summary Judgment on the Plaintiffs' claims for breach of contract is that parol evidence is inadmissible to support such claims. For the reasons set forth above, the Court finds this argument unavailing. Accordingly, the Court will deny the Defendants' Motion for Partial Summary Judgment.

## III. Plaintiffs' Motion for Class Certification

The Plaintiffs have moved to certify the class of ITT Hartford policyholders that have allegedly been harmed by the ITT Hartford sales practices described above. They argue that all of Rule 23's requirements have been met and that a class action is the superior means of adjudicating the Plaintiffs' claims against the Defendants. ITT Hartford does not dispute that any of the requirements in Rule 23(a) are satisfied, but generally argues that individualized questions of law and fact would predominate at trial and, therefore, individual adjudication of the Plaintiffs' claims would be preferable to a class action.

### 1. Standard of Review

Rule 23 of the Federal Rules of Civil Procedure sets out four prerequisites that must be met before a plaintiff can obtain certification as a class. The plaintiff bears the burden of showing that these four prerequisites are met and that the class should be certified. *See General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *Coleman v. Watt,* 40 F.3d 255, 258 (8th Cir.1994). The four prerequisites to class certification are as follows:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are defenses of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23; *see also Lockwood Motors, Inc. v. General Motors Corp.,* 162 F.R.D. 569, 573 (D.Minn.1995) ("The Court may certify the class only when it is satisfied after rigorous analysis that all of Rule 23's prerequisites are met."). In addition, a plaintiff seeking class certification must show that at least one of the provisions of Rule 23(b) is satisfied. *See* Fed.R.Civ.P. 23(b). Rule 23(b)(3), on which the Plaintiffs in the instant case exclusively rely, provides as follows:

---

**8.** ITT Hartford argues that *Florida Pottery Stores* and *Gay* are inapposite because neither case involved contracts with written integration clauses or modification clauses and because neither case involved oral representations that directly contradicted the written contract at issue. (*See* Defs.' Reply Mem. at 4 n. 3.) Neither case, however, dealt with the exceptions to the parol evi-

dence rule for cases involving written contracts that are not fully integrated or in cases involving extrinsic evidence that does not contradict the written contract at issue. (*See supra* pp. 598–99 and accompanying cases.) ITT Hartford has not discussed the analysis of the fraud exception in these cases, and has not shown how they are materially distinguishable from the instant case.

(b) An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

■■ In determining whether class certification is appropriate under Rule 23, the court must accept as true the allegations in the complaint. *See Lockwood Motors,* 162 F.R.D. at 573. Accepting those allegations as true, the trial court retains broad discretion in the determination of whether or not to certify a class. *See Falcon,* 457 U.S. at 161, 102 S.Ct. at 2372; *In re Potash Antitrust Litig.,* 159 F.R.D. 682, 689 (D.Minn.1995). Although a court should not decide the merits of a case at the class certification stage, *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974), a motion for class certification "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978) (citations and internal quotation marks

omitted). The duty of the trial court to ensure compliance with Rule 23(a) continues after certification of the class, and the court may decertify the class after the initial certification if appropriate. *See Hervey v. City of Little Rock,* 787 F.2d 1223, 1227 (8th Cir. 1986).[9] Finally, the court makes its determination mindful of the fact that the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—exist not only to protect the named parties, but also to protect unnamed and unknown potential class members. *See id.* at 1227.

### 2. Analysis

#### A. The Requirements of Rule 23(a)

##### 1. Numerosity

■ "In order to maintain a class action, Plaintiffs must show that the class of plaintiffs is so large that joinder of all members would be 'impracticable.'" *Potash,* 159 F.R.D. at 689 (citing *In re Federal Skywalk Cases,* 680 F.2d 1175, 1178 (8th Cir.1982)). While the Plaintiffs need not show that joinder of all class members would be impossible, they must show that it would be difficult. *See Lockwood Motors,* 162 F.R.D. at 574 (citing *Jenson v. Continental Fin. Corp.,* 404 F.Supp. 806, 809 (D.Minn.1975)). Rather than establish any absolute numbers that necessarily would or would not satisfy the numerosity requirement, the Eighth Circuit has held that "the question of what constitutes impracticability depends upon the facts of each case." *Boyd v. Ozark Air Lines, Inc.,* 568 F.2d 50, 54 (8th Cir.1977) (citing 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 1762 at 592 (1972)); *see also Paxton v. Union Nat'l Bank,* 688 F.2d 552, 561 (8th Cir.1982). In the instant case, the number of potential members in the nation-

---

9. The Defendants in the instant case contend that "pleadings in a lawsuit cannot establish that the Rule 23 requirements for a class action are met...." (*See* Defs.' Mem. of Law in Supp. of Mot. to Strike LaPolla Aff. at 1.) To support this assertion, the Defendants cite to *Walker v. World Tire Corp.,* 563 F.2d 918 (8th Cir.1977). In *Walker,* however, the Court concluded that "[t]here is nothing in the pleadings *here* conclusively resolving the class action question." *Id.* at 921 (em-

phasis added). The Court concluded that "[w]here ... the pleadings themselves do not conclusively show whether the Rule 23 requirements are met, the parties must be afforded the opportunity to discover and present documentary evidence on the issue." *Id.* (emphasis added). The clear implication of *Walker,* therefore, is that pleadings alone can conclusively show that the requirements of Rule 23 have been satisfied.

wide class is extremely large, and the Defendants do not dispute that joinder of so many potential plaintiffs would be impracticable. Because the Court has no doubt that joinder of all members would be impracticable, it concludes that the numerosity requirement is satisfied.

### 2. Commonality

■ The second provision of Rule 23(a) requires that the Plaintiffs show "that there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). While not every question of law and fact must be common to the entire class, the Plaintiffs must show that the course of action giving rise to their cause of action affects all putative class members, and that at least one of the elements of that cause of action is shared by all of the putative class members. *See Lockwood Motors*, 162 F.R.D. at 575 (citing *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir.1993)). As a general rule, the commonality requirement imposes a very light burden on plaintiff seeking to certify a class and is · easily satisfied. *See Newberg*, § 3.10 at 3–50 (collecting cases).

■ The commonality requirement of Rule 23(a) is distinct from the inquiry under Rule 23(b) regarding whether common issues of law or fact would predominate over questions affecting only individual members. To satisfy the commonality requirement under Rule 23(a), a party need simply show that "the legal question linking the class members is substantially related to the resolution of the litigation." *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir.1995) (citations and quotation marks omitted). The fact that different ITT Hartford policies are at issue and may give rise to separate claims that could be dealt with through the use of subclasses does not have any impact on the determination of whether the commonality requirement is satisfied. *Id.* (citing *Forbush*, 994 F.2d at 1106 (commonality and typicality satisfied in challenge to pension calculations despite presence of four different pension plans)). In the instant case, the Court finds that the Plaintiffs have sufficiently shown a nexus between issues both of law and of fact to satisfy the commonality requirement of Rule 23(a).

### 3. Typicality

■ The third provision of Rule 23(a) requires a plaintiff seeking class certification to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R.Civ.P. 23(a)(3). "Typicality is satisfied when the claims of the named plaintiffs emanate from the same event or are based on the same legal theory as the claims of the class members." *Lockwood Motors*, 162 F.R.D. at 575 (quotation and citations omitted). In order to satisfy the typicality requirement, a plaintiff must demonstrate that the claims are sufficiently similar that (1) the representative parties will adequately protect the interests of the class, and (2) there are no antagonistic interests between the representatives and the class. *See In re Wirebound Boxes Antitrust Litig.*, 128 F.R.D. 268, 270 (D.Minn.1989).

■ In the instant case, the claims of the four named Plaintiffs are similar to those of the rest of the class. The slight variations in the types of policies purchased by members of the class or the language contained therein does not alter the fact that the claims of the class are similar in many ways to those of the named Plaintiffs. *See DeBoer*, 64 F.3d at 1174 ("The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff.") (citing *Paxton*, 688 F.2d at 562). Even if the class members' claims involved substantially different factual circumstances from one another, the strong similarity of legal theories from one member's claim to another would be sufficient to satisfy the typicality requirement. *See Lockwood Motors*, 162 F.R.D. at 575. The Court finds, therefore, that the Plaintiffs have satisfied the typicality requirement of Rule 23.

### 4. Adequacy

■ Finally, Rule 23(a) imposes a requirement that the representative parties will fairly and adequately protect the interests of the class. This requirement is related to the typicality requirement; if the repre-

sentative parties have interests or claims—or defenses to counterclaims—that are significantly different to that of the majority of class members, then neither typicality or adequacy is present. *See Potash*, 159 F.R.D. at 692; *Wirebound Boxes*, 128 F.R.D. at 270. In order to satisfy the adequacy requirement, the Plaintiffs must show "that (1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously and (2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *Potash*, 159 F.R.D. at 692 (citing *Wirebound Boxes*, 128 F.R.D. at 270). In the instant case, the Defendants have not argued that the named Plaintiffs or their attorneys are in any way incapable of fairly and adequately representing the class, or that there is any likelihood of diverging or conflicting interests among the class members. The Court can foresee no problems with the adequacy of representation if the class is certified and it finds, therefore, that the Plaintiffs have satisfied the adequacy requirement of Rule 23(a).

### B. The Requirements of Rule 23(b)

The heart of the parties' dispute over class certification centers around the second part of Rule 23 and, specifically, on subdivision (b)(3). Subdivision (b)(3) of Rule 23 focuses more broadly than the subdivision (a) requirements on the issue of whether a class action is the superior method for adjudicating the parties' dispute. If the Rule 23(a) requirements are not satisfied, there is no need to reach subdivision (b) of the Rule, because a party must satisfy both subdivision (a) and subdivision (b) in order for a court to properly certify a class. *See* Fed.R.Civ.P. 23(b). In the instant case, although the Defendants do not often refer to Rule 23 in their responsive memorandum, they have focused on the broader Rule 23(b)(3) inquiry rather than arguing that the four requirements of subdivision (a) have not been satisfied. Because the Plaintiffs have shown that the four subdivision (a) prerequisites have been satisfied, the Court now shifts its focus to subdivision (b)(3).[10]

A party seeking class certification satisfies Rule 23(b)(3) by showing both (a) "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and (b) "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3).[11] As noted above, the predominance requirement of subdivision (b)(3) is "far more demanding" than the "commonality" requirement of subdivision (a). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2250, 138 L.Ed.2d 689 (1997). Although there is no bright-line boundary for determining whether common issues of fact or law predominate, "predominance will be found where generalized evidence may prove or disprove elements of a claim, since such proof obviates the need to examine the elements individually." *Tricord*, 1996 U.S.Dist. LEXIS 20943, at *32 (citations omitted); *see also Lockwood Motors*, 162 F.R.D. at 580. "Common questions need only predominate; they need not be dispositive of the litigation." *Lockwood Motors*, 162 F.R.D. at 580 (citations omitted); *see also* 7A Wright, Miller & Kane *Federal Practice and Procedure* § 1778 at 528–29 ("[W]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately."), *cited in Lockwood Motors*, 162 F.R.D. at 580.

---

**10.** Subdivision (b) of Rule 23 has three further subdivisions, and a party seeking class certification need satisfy only one of them (in addition to the subdivision (a) prerequisites) in order to satisfy Rule 23. In the instant case, however, the Plaintiffs do not claim to have satisfied subdivisions (b)(1) or (b)(2), but argue only that they have satisfied subdivision (b)(3).

**11.** Another way to look at the class certification determination when a party claims to have satisfied Rule 23(b)(3) is that Rule 23 imposes six requirements altogether: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy of representation; (5) predominance; and (6) superiority. *See In re Tricord Sys., Inc. Sec.Litig.*, Civ. No. 3–94–746, 1996 U.S.Dist. LEXIS 20943, *15 (D.Minn. Apr. 5, 1996) (attached as Ex. 51 to LaPolla Aff.).

In the instant case, the Plaintiffs have alleged that the Defendants[12] have orchestrated a nationwide deceptive marketing campaign, and generated documents for distribution to its agents. Among these documents are illustrations generated by the Defendants showing accumulation of funds based on interest rates that, according to the Plaintiffs, were unrealistically high. The Plaintiffs have also produced evidence that the Defendants advertised and promoted their life insurance as an investment vehicle or retirement plan. Although the Defendants contend that they had no uniform script, presentation, or marketing materials, they do not deny having produced the materials on which the Plaintiffs rely. The Defendants argue that they encouraged their sales agents to be ethical, lawful, and accurate, and that the Plaintiffs relied not on company-produced material but on the representations of the individual sales agents with whom each of them dealt. (*See* Defs.' Opp'n Class Cert.Mem. at 7–15.) Although the Court may not make a preliminary determination on the merits, something that is inappropriate on a motion for class certification, *Eisen*, 417 U.S. at 177, 94 S.Ct. at 2152, it has considered the factual allegations of the Plaintiffs and anticipated the possible defenses thereto in ruling on this Motion.

■ Although, as noted above, the Plaintiffs have satisfied the requirements of Rule 23(a), the Court finds that individual issues of fact regarding ITT Hartford's liability would render a class adjudication of the Plaintiffs' claims untenable. Specifically, the Court finds that it would be virtually impossible—and certainly impracticable—to resolve on a class-wide basis questions of individual reliance on the part of class members.[13] The Plaintiffs argue that reliance need not be proven on an individualized basis but may be proved in the aggregate because of the Defendants' alleged fraud on the entire class. (*See* Pls.' Supp. Class Cert.Mem. at 13–14.)

In *Cope v. Metropolitan Life Insurance Co.*, 82 Ohio St.3d 426, 696 N.E.2d 1001 (1998), in which the Ohio Supreme Court held that the lower court's denial of class certification in a case similar to the instant case constituted an abuse of discretion, the court addressed the question of individual reliance. The court first quoted from the 1966 Advisory Committee Notes to Rule 23(b)(3), which state:

> [A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action. . . . On the other hand, although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed.

*Cope*, 696 N.E.2d at 1004. The *Cope* court went on to note that:

> Courts generally find that the existence of common misrepresentations obviates the

---

12. The plaintiffs do not differentiate between IHLA and HLIC, referring to both entities collectively as "Hartford." Although they will ultimately have to prove their claims against one or both entities specifically, these joint references are immaterial at the class certification stage.

13. The question of reliance may be a factor only with regard to the Plaintiffs' common-law claims, rather than their statutory claims. The parties disagree on the issue of whether reliance is an element of Minnesota's various consumer fraud statutes, and the Court concludes that there is room for reasonable disagreement on this question. *Compare, e.g., State v. Alpine Air Prods., Inc.*, 500 N.W.2d 788, 790 (Minn.1993) ("In passing consumer fraud statutes, the legislature clearly intended to make it easier to sue for consumer fraud than it had been to sue for fraud at common law. The legislature's intent is evidenced by the *elimination* of elements of common law fraud, such as proof of damages or reliance on misrepresentations.") *with First State Bank v. Jubie*, 847 F.Supp. 695, 704 n. 16 (D.Minn.1993) (Erickson, Mag. J.) (suggesting that a plaintiff must prove reliance to recover in a statutory fraud action as well as in a common-law fraud action). Although the issue was raised in the parties' memoranda and during oral argument, neither party has fully briefed or argued the issue. (*See* Pls.' Supp. Class Cert.Mem. at 13; Defs.' Opp'n Class Cert.Mem. at 15; Pls.' Reply Class Cert.Mem. at 6.) During oral argument, counsel for ITT Hartford opined that the *Alpine Air* decision was wrong. Because the Court concludes that the Plaintiffs' common-law claims require each of them individually to prove reliance on the alleged misrepresentation in question, the Court need not resolve the issue of whether a similar showing is necessary for the Plaintiffs' statutory claims.

need to elicit individual testimony as to each element of a fraud or misrepresentation claim, especially where written misrepresentations or omissions are involved. They recognize that when a common fraud is perpetrated on a class of persons, those persons should be able to pursue an avenue of proof that does not focus on questions affecting only individual members. If a fraud was accomplished on a common basis, there is no valid reason why those affected should be foreclosed from proving it on that basis.

*Id.* (citations omitted). In *Cope,* however, the court found that "appellants' claims are not based on any oral or affirmative misrepresentations, or any other actionable conduct occurring during pre-application sales negotiations." *Id.* at 1006. Instead, the Plaintiffs' claim in *Cope* was based upon their allegation that the defendant life insurance company "engaged in a scheme to collect larger commissions and front-end load charges by intentionally omitting the state-mandated written disclosure warnings when issuing replacement life insurance." *Id.; see also id.* at 1006 n. 3 (agreeing with the trial court's characterization of the plaintiffs' claim in *Cope* that the case "is to be decided strictly on the standard written policy contracts, not upon any oral misrepresentations of [the defendant life insurance company] or its agents."). On this basis alone, *Cope* is distinguishable from the instant case and, for that reason, the Court need not address the issue of whether *Cope* was correctly decided.

In the instant case, the Plaintiffs allege that the genesis of the fraudulent conduct was ITT Hartford, and that the fraud was perpetrated by a single course of conduct undertaken by ITT Hartford. To recover for their claims of fraudulent inducement or breach of contract, however, each Plaintiff will have to individually show that the ITT Hartford sales agent with whom he or she dealt made some oral representation regarding the life insurance policy on which that Plaintiff relied when purchasing the policy. *See Mettler, Inc. v. Ellen Tracy, Inc.,* 648 So.2d 253, 255 (Fla.Dist.Ct.App.1994) (to establish fraudulent inducement under Florida law, a plaintiff must show, *inter alia,* reliance on a misrepresentation of material fact); *see*

*also Davis v. Re–Trac Mfg. Corp.,* 276 Minn. 116, 117, 149 N.W.2d 37, 38–39 (1967) (same, under Minnesota law); *Witzman v. Wolfson,* 1998 WL 713484, at *5 (Minn.Ct.App.1998), *review denied,* Dec. 22, 1998. Although the Plaintiffs generally claim that ITT Hartford—rather than the individual sales agents—was responsible for the deceptive and fraudulent information conveyed to them, it is clear that the manner in which this information was conveyed to them was through the individual sales agents. The oral representations of each individual sales agent—as well as each Plaintiff's reliance thereon—will necessarily vary from Plaintiff to Plaintiff, from sales agent to sales agent, and from incident to incident. Because of the need to show reliance on an individualized basis, class-wide adjudication of the Plaintiffs' non-statutory claims would be at best unwieldy, and potentially impossible. *See Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1006 (11th Cir.1997); *Peoples v. American Fidelity Life Ins. Co.,* 176 F.R.D. 637, 644–46 (N.D.Fla.1998).

In *Peoples,* a group of life insurance policyholders sued their life insurance company, alleging that the company had designed a sales pitch containing fraudulent misrepresentations about the life insurance product being sold. *Id.* at 639. The plaintiffs alleged that the sales pitch was designed to be delivered in exactly the same manner by any sales agent attempting to sell that particular life insurance product. *Id.* The court found, however, that "while there is certainly a canned training presentation, there is no proof that the canned presentation was used consistently nationwide, much less as between these plaintiffs." *Id.* at 644. "[A]ctions alleging consumer fraud based on oral misrepresentations," the court concluded, "are generally held to be unsuited for class treatment because ... common questions would not be found to predominate." *Id.* at 645 (citing Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1782). Specifically, the court held that each of the plaintiffs would be compelled to present detailed evidence of the transaction in which that plaintiff purchased the life insurance policy at issue. The court explained:

If · common issues of fact predominate, there is some reasonable expectation that the ultimate trial of the case will be manageable. The contrary is also true. If each purchase of a policy has to be examined as to the content of the presentation, the questions asked by the purchaser, the parts of the offer which were attractive to the purchaser, and the reliance by the purchaser on both the oral and written presentations, there will have to be a mini-trial involving each of those issues for each of the thousands of purchasers plaintiffs purport to represent. It is abundantly clear from the foregoing analysis that this case contains a factual minefield.

*Id.; see also In re Jackson Nat'l Life Ins. Co. Premium Litig.*, 183 F.R.D. 217, 221 (W.D.Mich.1998) ("[D]etermination of whether and which [life insurance policy] illustrations were given to class members, and of the nature of oral representations made to them at the point of sale, elements of obvious and undeniable importance to all of plaintiffs' claims, are matters requiring individualized fact development.") The instant case presents a similar "factual minefield" on the issue of reliance, and the Court concludes that reliance may not be proven on a class-wide basis.[14]

The Plaintiffs have shown that each of Rule 23(a)'s requirements have been satisfied. The Court concludes, however, that resolution of the Plaintiffs' non-statutory claims will require individual determinations of whether and to what extent each Plaintiff relied on the alleged oral representations of ITT Hartford's sales agents. Moreover, the Court concludes that ITT Hartford would be entitled to assert as an affirmative defense against the Plaintiffs' non-statutory claims[15] any non-reliance by an individual Plaintiff. Because of the need for these individualized determinations, the Court is unconvinced that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" or that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3). Accordingly, the Court will deny the Plaintiffs' Motion for Class Certification.

## Conclusion

For the foregoing reasons, and based upon all of the files, records and proceedings herein, **IT IS ORDERED** that:

(1) Defendants' Motion to Strike the Affidavit of Regina LaPolla (Doc. No. 81) is **GRANTED IN PART,** with regard to the

---

**14.** The Defendants contend that Minnesota substantive law cannot constitutionally be applied to the entire class and, because the law of fraud varies greatly from one jurisdiction to another, the variations in substantive law to be applied create insurmountable obstacles to resolution of this matter on a classwide basis. (*See* Defs.' Opp'n Class Cert.Mem. at 26–31.) Although resolution of this issue is unnecessary because of the Court's ruling on the issue of predominance regarding the specific question of individual reliance, the Court notes its disagreement with ITT Hartford's argument. Even assuming that the Court would not apply Minnesota law uniformly to all of the Plaintiffs' claims, it would not be necessary to apply 50 distinct legal standards to the Plaintiffs' fraud claims. As the Plaintiffs have demonstrated, the tort regimes of the various states can appropriately be grouped into a relative few general categories. *See, e.g., Field v. Mans,* 516 U.S. 59, 72–73, 116 S.Ct. 437, 445, 133 L.Ed.2d 351 (1995) (grouping the states' required levels of reliance for common-law fraud into three categories: reasonable reliance, justifiable reliance, or mere reliance in fact). Application of the various tort standards could be dealt with relatively easily through the use of subclass-

es and special interrogatories to the jury. Other courts that have confronted this issue have held that application of various different legal standards does not necessarily mean that a class action would be unmanageable. *See, e.g., In re Pizza Time Theatre Sec. Litig.,* 112 F.R.D. 15, 20 (N.D.Cal.1986) (assuming arguendo that the defendants were correct in their contention that the laws of the various states on fraud were "significantly different," but granting the plaintiffs' motion for class certification because, in part, "the similarities in these laws vastly outweigh any differences"); *In re LILCO Sec. Litig.,* 111 F.R.D. 663, 670 (E.D.N.Y.1986) (declining to resolve the choice of law issue on a motion for class certification but noting that "if New York choice of law rules require us to apply the law of all fifty states, this does not render the trial per se unmanageable."); *Graham v. Knutson Mortgage Corp.,* No. CT 94–11043, 1996 WL 407491, at *6 (Minn.Dist. Ct.1996) (stating that the court was unconvinced that reference to laws of all fifty states would be necessary but that, if it was necessary, it would not be "a particularly unmanageable task").

**15.** *See supra* note 13.

narrative descriptive portion of the Affidavit, and **DENIED IN PART,** with regard to the exhibits attached thereto;

(2) Defendants' Motion for Partial Summary Judgment on the Plaintiffs' claims for breach of contract (Doc. No. 111) is **DENIED;** and

(3) Plaintiffs' Motion for Class Certification (Doc. No. 75) is **DENIED.**