James H. VAN WEST, Individually and On Behalf Of All Others Similarly Situated,

v.

MIDLAND NATIONAL LIFE INSURANCE COMPANY.

No. CA 98–076–T.

United States District Court, D. Rhode Island.

March 19, 2001.

Richard W. McAdams, McAdams & Wieck, Inc., Providence, RI, Gary S. Graifman, Kantrowitz & Goldhamer, PC, Chestnut Ridge, NY, Joseph H. Weiss, Weiss & Yourman, New York City, David Jesse Oliveira, Providence, RI, for plaintiff.

Deming E. Sherman, Patricia A. Sulivan, Marc A. Crisafulli, Edwards & Angell, Providence, RI, Seth A. Abel, Robert L. Hickok, Pepper, Hamilton & Scheetz, Philadelphia, PA, for defendant.

### MEMORANDUM AND ORDER

TORRES, Chief Judge.

James Van West brought this action alleging that Midland National Life Insurance Company ("Midland") made false representations that induced him to purchase one of Midland's "vanishing premium" life insurance policies.

Van West has moved, pursuant to Fed. R.Civ.P. 23(b)(3), to certify the case as a class action. That motion is denied, primarily, because the questions common to members of the proposed class do not predominate over the questions affecting only its individual members.

#### Background

The allegations in the complaint essentially are as follows. Beginning in 1984, Midland, through its network of sales agents, and through independent agents and brokers, sold life insurance policies based on representations that, at a specified time, the investment earnings from each policy's cash value would be sufficient to maintain the policy and the premiums would "vanish."

The complaint alleges that Van West and others purchased policies in reliance on those representations and that the representations were knowingly false, or at least that Midland failed to disclose the assumptions on which they were based and the concomitant risk that the premiums might not vanish. Van West claims that, as a result, he and the other members of the putative class did not receive what they bargained for and have been forced to expend additional sums of money to maintain their coverage.

In particular, the complaint alleges that, in 1984, Van West purchased a policy in the face amount of $250,000, based on the representation that if he made annual premium payments of six thousand plus dollars for five years, the policy would be fully funded and no further premiums would be required. However, in 1990, because the investment returns on the policy were less than anticipated, Van West was required to pay an additional premium in order to maintain his level of coverage. Van West borrowed the amount of the premium from the policy's cash value.

The complaint further alleges that, in 1991, Midland required Van West to repay the policy loan and to pay yet another annual premium in order to maintain his coverage. Van West claims that he made those payments upon receiving an assurance that no further premiums would be required. However, in 1995, Midland threatened to reduce Van West's death benefit unless he resumed making premium payments. Van West reluctantly agreed to accept a new policy containing what he describes as inferior provisions.

Four of the counts in Van West's twelve-count complaint previously were dismissed pursuant to Rule 12(b)(6). Although the remaining eight counts embrace a potpourri of legal theories, they essentially are claims for fraud or misrepresentation and breach of contract, and their common theme is that Midland falsely represented that the premiums required under its policies would "vanish."

Van West asserts that the alleged misrepresentations were part of an overarching

scheme by Midland to promote the sale of its policies. According to Van West, the scheme was implemented by the dissemination of written materials and oral sales presentations made by agents and brokers authorized to sell Midland's policies based upon information and training provided by Midland.

The class for which Van West seeks certification consists of:

> "All persons or entities who have (or had at the time of the policy's termination) an ownership interest in one or more life insurance policies issued by Midland; from and after at least January 1, 1984, that was purchased or maintained based upon the deceptive practices and wrongful conduct described [within the complaint]."

First Amended Complaint, ¶ 14.

### *Discussion*

A party seeking to bring a class action has the burden of establishing that the requirements of Rule 23(a) have been satisfied and that the proposed action falls within one of the three categories enumerated in Rule 23(b). *Caranci v. Blue Cross & Blue Shield of Rhode Island,* 194 F.R.D. 27, 38 (D.R.I. 2000).

Rule 23(a) provides that an action may be brought by a representative on behalf of a class "only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

In addition to satisfying these prerequisites, the putative class action also must fall within one of the three categories enumerated in Rule 23(b).

### I. *Ascertainability*

■ In order to decide whether the requirements of Rule 23 have been satisfied, the Court, first, must determine whether an identifiable class exists. *Kent v. SunAmerica Life Insurance Co.,* 190 F.R.D. 271, 278 (D.Mass.2000) (citing *Haywood v. Barnes,* 109 F.R.D. 568, 576 (E.D.N.C.1986)). The

proposed class must be precisely defined and its members must be ascertainable through the application of "stable and objective factors" so that a court can decide, among other things, "who will receive notice, who will share in any recovery, and who will be bound by the judgment." *Kent,* 190 F.R.D. at 278 (citing *Crosby v. Social Sec. Admin.,* 796 F.2d 576, 580 (1st Cir.1986); *Davoll v. Webb,* 160 F.R.D. 142, 144 (D.Colo.1995)). The ascertainability requirement is not satisfied when the class is defined simply as consisting of all persons who may have been injured by some generically described wrongful conduct allegedly engaged in by a defendant. That is especially true when the conduct consists of a series of discrete acts that vary in nature and are committed over a protracted period of time. *See Kent,* 190 F.R.D. at 277 (proposed class of persons who purchased vanishing premium policies based on "misleading or fraudulent actuarial assumptions and projections that were not disclosed to marketing employees and agents" not ascertainable). For example, there would be no practical way to determine, in advance of trial, who belongs to a class consisting of all persons allegedly injured by a hospital's failure to properly train its nurses.

■ In this case, the proposed class would encompass everyone who purchased one of Midland's vanishing premium policies "based upon the deceptive practices and wrongful conduct described [in the complaint]." First Amended Complaint, ¶ 14. Those practices and that conduct span a period of approximately sixteen years and are described only in the most general of terms as a variety of unspecified representations that premiums would "vanish." Furthermore, the complaint indicates that the alleged misrepresentations were made by unnamed agents of Midland's "sales force" who dealt with individual class members, thereby indicating that the representations varied somewhat from purchaser to purchaser.

Accordingly, it is virtually impossible to identify the putative class members with any degree of precision in advance of trial. Moreover, as discussed below, even if the class members were ascertainable, variations in both the alleged misrepresentations made

to them and the nature of their reliance would prevent satisfaction of the typicality and adequacy of representation requirements of Rule 23(a) and the predominance requirement of Rule 23(b)(3).

## II. *Rule 23(a)*

Rule 23(a) contains four preliminary requirements that must be satisfied in order to maintain a class action:

(1) *numerosity*—the class members must be so numerous that it is impracticable to join all of them,

(2) *commonality*—there must be questions of law or fact common to the class,

(3) *typicality*—the claims or defenses of the representative parties must be typical of the claims or defenses of the class, and

(4) *adequacy of representation*—it must appear that the representative parties will fairly and adequately protect the interests of the class.

### A. *Numerosity*

■ Numerosity is not an issue in this case. The plaintiff alleges, and the defendant does not dispute, that Midland's "vanishing premium" policies were purchased by thousands of individuals who live throughout the country. Furthermore, it appears that literature describing the policies was widely distributed to prospective purchasers. Accordingly, the numerosity requirement is satisfied because it clearly is impracticable to join all of the putative class members as plaintiffs.

### B. *Commonality*

■ The requirement of establishing that there are questions of law or fact common to the class is not a particularly onerous one. It does not demand that *every* issue to be litigated must be an issue common to the claims of all class members. It requires the existence of only *some* common issue or issues. *Baby Neal ex rel. Kanter v. Casey,* 43 F.3d 48, 56 (3d Cir.1994). Indeed, in some cases, a single common issue may suffice. *Forbush v. J.C. Penney Co. Inc.,* 994 F.2d 1101, 1106 (5th Cir.1993). The fact that separate proof may be required with respect to

matters such as damages and reliance, or that the claims of various class members are governed by the laws of different jurisdictions, may be factors militating against certification, but they do not necessarily preclude a class action. *Patrykus v. Gomilla,* 121 F.R.D. 357, 361 (N.D.Ill.1988).

■ An issue is a common issue when the claims of all the class members turn on the same set of facts so that separate determinations need not be made for each class member. In this case, allegations that some of the alleged misrepresentations were contained in literature that was widely distributed by Midland raise common issues regarding what representations were made and whether they were false.

### C. *Typicality*

■ The typicality requirement is designed to insure that the claims of the purported class representative are sufficiently similar to the claims of the class members, as a group, that prosecution of the class representative's case will benefit the entire class. *In re Prudential Insur. Co. of America Sales Practices Litigation,* 148 F.3d 283, 311 (3d Cir.1998). Ordinarily, a purported representative's claim is typical if it arises from the same course of conduct and is based on the same legal theory as the claims of the class as a whole. *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.1992). On the other hand, the claims of a purported class representative are not typical if, in order to prove the claims of other class members, the representative must prove something different from what is necessary to prove his own claim. *Prudential,* 148 F.3d at 312 (quoting *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 158, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ("*Falcon* would need to prove much more than the validity of his own claim in order to prove the claims of the absentee class members, and thus his claims were not typical of the class.")); *see also Advertising Specialty National Assoc. v. FTC,* 238 F.2d 108, 120 (1st Cir.1956) (the interests of the representative must be co-extensive with those of the class).

Because Van West's claim rests not only on literature allegedly distributed to all prospective purchasers, but also on oral representations made to him by his agent or broker, the evidence required to prove his claim would differ considerably from the evidence required to prove the claims of other class members. Thus, Van West might prevail by showing that a particular agent made false representations to him, in which case he would have no need or incentive to present the additional facts necessary to prove that other agents made misrepresentations to other class members.

In an apparent effort to allay that concern and to buttress his typicality argument, Van West asserts that, because Midland uniformly trained its agents and supplied agents and brokers with the same promotional materials, the misrepresentations made to him also must have been made to other class members. However, there is no justification for such an inferential leap. In order to bridge that gap, Van West would be required to present individualized evidence that would run afoul of Rule 23(b)'s requirement that common questions predominate.

### D. *Adequacy of Representation*

Two of the things that must be established in order to satisfy the requirement that a class representative "will fairly and adequately protect the interest of the class" are: (1) the representative's counsel must be qualified to conduct the litigation and (2) the representative, himself, must not have interests antagonistic to those of the class. *Lamphere v. Brown University*, 71 F.R.D. 641, 649 (D.R.I.1976).

Here, it is undisputed that Van West's counsel are competent and experienced in class-action litigation. However, as already noted, while Van West's interests may not be antagonistic to the interests of the other class members, his interests do not entirely coincide with theirs.

### III. *Rule 23(b)*

In addition to satisfying the prerequisites of Rule 23(a), a class action also must fit within one of three categories described in Rule 23(b). Van West relies on subsection (b)(3) which requires him to demonstrate that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

### A. *Predominance of Common Questions*

While the mere existence of some common issues may satisfy the commonality requirement of Rule 23(a), it is not sufficient to satisfy the requirements of Rule 23(b)(3). Subsection (b)(3) requires that the common issues "predominate" over the issues unique to individual class members, and that a class action be superior to any other method of adjudication. The predominance requirement of Rule 23(b)(3) is more stringent that the commonality requirement of Rule 23(a). "The Rule 23(b)(3) predominance inquiry tests whether the class is sufficiently cohesive to warrant adjudication by representation, and mandates that it is far more demanding than the Rule 23(a)(2) commonality requirement." *In re LifeUSA Holding Inc.*, 242 F.3d 136, 144 (3d Cir.2001).

As previously stated, common issues are those that can be resolved on a class-wide basis and do not require individualized determinations. In determining whether common issues "predominate," the threshold question is whether those issues overshadow the issues that must be resolved separately for different members of the class.

Here, the dominant issue is whether Midland falsely represented that premiums on its policies would "vanish" within a specified period of time. If that issue can be resolved on a class-wide basis, the fact that there may be additional or subsidiary issues such as reliance and damages that require individualized determinations would not necessarily preclude certification. *Bresson v. Thomson McKinnon Securities Inc.*, 118 F.R.D. 339, 343 (S.D.N.Y.1988) (necessity of making individual determinations of reliance and damages do not defeat class certification where common issues regarding liability predominate). Conversely, if the false representation issue is one that cannot be resolved on a

**454**

class-wide basis, certification clearly would be inappropriate.

To the extent that the alleged misrepresentations are contained in literature disseminated by Midland to prospective buyers, a common issue is presented because class-wide determinations could be made as to what representations were made and whether those representations were false. However, to the extent that the alleged misrepresentations include different statements made to individual class members by a variety of agents or brokers, it would require proof of what each class member was told and the nature of the relationship between Midland and the particular agent or broker making the statements.

In this respect, this case is distinguishable from *Prudential,* 148 F.3d 283, on which Van West relies. In *Prudential,* the court found that the misrepresentations and harm alleged by the named plaintiff resulted from the "same company-wide conduct that injured the absentee class members." 148 F.3d at 312. Here, Van West has alleged misrepresentations by Midland to class members, in general, and by various agents and brokers to particular class members. Because the evidence regarding what different agents and brokers may have told particular class members will vary, determining whether Midland falsely represented that premiums would vanish becomes a matter of individualized proof rather than a common question.

**B.** *Superiority of Class–Action Method*

Rule 23(b)(3) also requires that a class action be superior to any other available method of adjudication. "This provision is intended to permit class actions that would achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Duhaime v. John Hancock Mutual Life Insurance Co.,* 177 F.R.D. 54, 65 (D.Mass.1997), quoting *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 615, 117 S.Ct. 2231, 2246, 138 L.Ed.2d 689 (1997).

Many of the factors previously discussed make it obvious that a class action is not a superior method of adjudicating the claims of these proposed class members. Because individualized proof would be required to establish: 1) what verbal misrepresentations, if any, were made to each class member, 2) whether the persons making those representations were agents of Midland, 3) whether and to what extent each class member justifiably relied on the alleged misrepresentations, and 4) what damages each class member suffered, a class action would not contribute to the fair and efficient resolution of the claims asserted. On the contrary, it would do little more than superimpose the considerable management problems inherent in class action litigation upon the trials of individual claims by members of the putative class. In short, a class action would not provide a "superior" method of adjudicating cases that require separate proof with respect to so many issues.

### Conclusion

For all of the foregoing reasons, plaintiffs' motion for class certification is DENIED.