In re LUTHERAN BROTHERHOOD
VARIABLE INSURANCE PRODUCTS
CO. SALES PRACTICES LITIGATION

No. 99–MD–1309.

United States District Court,
D. Minnesota.

June 5, 2001.

Patricia A. Bloodgood, Katheryn A. Andresen, Lockridge Grindal Nauen, Edward Thomas Wahl, Faegre & Benson, Richard A. Lockridge, Robert Kinney Shelquist, Minneapolis, MN for plaintiffs.

James Brehl, Afton, MN, Pro se.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

This matter is before the Court on Plaintiffs' Motion for Class Certification. For the following reasons, the Court grants in part and denies in part Plaintiffs' Motion.

### BACKGROUND

Defendant Lutheran Brotherhood is a not-for-profit fraternal benefit society organized under the laws of Minnesota for the purpose of issuing insurance products to its members. Defendant sells its life insurance policies through thirty-four general agencies and 1,136 full-time district representatives. In this matter, the Named Plaintiffs purport to represent a class of individuals who either purchased "vanishing premium" life insurance policies or converted existing life insurance policies to the "vanishing premium" policies through Defendant. The life insurance policies at issue here include Defendant's universal life and traditional life policies. Plaintiffs assert that in 1982, Defendant developed sales illustrations that projected high interest rates over a twenty-year period to create the illusion that policyholders' obligation to pay out-of-pocket premiums on these life insurance policies would end on the "vanish date" calculated in the illustrations. Plaintiffs assert that in reality, their obligation to pay out-of-pocket premiums did not disappear because actual interest rates were not nearly as high as those projected in Defendant's illustrations. Plaintiffs assert that as a result of Defendant's misleading actions, they purchased insurance policies or converted existing policies that now have diminished value, have lapsed, or are underfunded and in danger of lapsing. Plaintiffs further assert that Defendant knew that its policies and illustrations would mislead members, and that the policies were underfunded and would lapse. Accordingly, Plaintiffs bring claims against Defendant for common law breach of fiduciary duty and consumer fraud under Minnesota's Prevention of Consumer Fraud Act, Minn.Stat. § 325F.69. Given the number of members affected by Defendant's allegedly fraudulent conduct, Plaintiffs seek to litigate this case as a class action. Plaintiffs ask this Court to certify a class of persons:

> to whom, between January 1, 1982 and the present (the "Class Period"), Lutheran Brotherhood sold a life insurance policy through the use of a payment method under which, or written illustrations which projected that, the obligation to pay for any portion of the policy would vanish or be offset by using dividend and/or interest, or cash value from the policy being purchased or any previously owned or inforce policy (the "Class").

(Pls.' Mem. at 2.) Defendant opposes certification of this class on various grounds, each of which is discussed fully below.

## DISCUSSION

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs must meet the requirements of both Rule 23(a) and (b) to be certified as a class. As an initial matter, the Court notes that numerous courts have addressed the issue of whether vanishing premium cases such as this are appropriate class action cases. As Plaintiffs note, many courts have certified this type of litigation and settlement class. *See, e.g., In re Prudential Ins. Co. Am. Sales Practices Litig.*, 148 F.3d 283 (3rd Cir.1998); *Spitz v. Connecticut Gen. Life Ins. Co.*, CV95–3566 HLH (C.D.Cal. Feb. 12, 1997); *In re Mfrs. Life Ins. Co. Premium Litig.*, MDL No. 1109 (S.D.Cal. Dec. 21, 1998); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54 (D.Mass.1997); *Elkins v. Equitable Life Insurance Co. of Iowa*, No. 96–296–CIV–T–17B, 1998 WL 133741 (D.Mass. Jan. 27, 1998); *In re New England Mut. Life Ins. Co. Sales Practices Litig.*, 183 F.R.D. 33 (D.Mass.1998); *Snell v. Allianz Life Ins. Co. of N. Am.*, No. 97–2784, 2000 WL 1336640 (D.Minn. Sept. 8, 2000); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450 (D.N.J.1997); *Nickle v. Crown Life Ins. Co.*, MDL No. 1096, Civ. No. M–96–238 (S.D.Tex. Mar. 19, 1997); *Cope v. Metro. Life Ins. Co.*, 82 Ohio St.3d 426, 696 N.E.2d 1001 (1998); *Wilson v. New York Life Ins. Co.*, 1995 N.Y. Misc. LEXIS 652 (N.Y.Sup.Ct. Nov. 8, 1995); *Goshen v. The Mut. Life Ins. Co. of New York*, No. 95–600466 (N.Y. Sup.Ct. June 7, 1996); *Michels v. Phoenix Home Life Mut. Ins. Co.*, No. 95–5318, 1997 WL 1161145 (N.Y.Sup.Ct. Jan. 3, 1997); *Justice v. Great–West Life Assurance Co.*, No. 94–3155 (Texas Dist. Ct., Dallas County, Aug. 1, 1995).

As Defendant points out, however, other courts, including this court, have held that class certification should not be granted in vanishing premium insurance cases. *See, e.g., In re Hartford Sales Practices Litig.*, 192 F.R.D. 592 (D.Minn.1999); *Parkhill v. Minnesota Mut. Life Ins. Co.*, 188 F.R.D. 332, (D.Minn.1999); *Peoples v. Am. Fid. Life Ins. Co.*, 176 F.R.D. 637 (N.D.Fla.1998); *Clarke v. Guardian Life Ins. Co. Am.*, No. 95–12590–REK (D.Mass. May 28, 1997); *In re Jackson Nat'l Life Ins. Co. Premium Litig.*, 183 F.R.D. 217 (W.D.Mich.1998); *Rothwell v. Chubb Life Ins. Co. of Am.*, 191 F.R.D. 25 (D.N.H.1998); *Van West v. Midland Nat'l Life Ins. Co.*, 199 F.R.D. 448 (D.R.I.2001).

### A. Rule 23(a) Analysis

In order to satisfy the threshold requirements of Rule 23(a), the named plaintiffs must establish that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a); *see also Parkhill*, 188 F.R.D. at 337. The Court exercises broad discretion in determining whether such criteria are met. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 345, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979); *Parkhill*, 188 F.R.D. at 337. In this case, Defendant asserts that Plaintiffs fail to meet all the requirements of Rule 23(a). The Court will address each disputed requirement in turn.

### 1. *Numerosity*

Numerosity requires that the proposed class be so numerous that joinder is impractical. Fed.R.Civ.P. 23(a)(1). Courts have established no arbitrary or rigid rules regarding the required size of a class, and what constitutes impracticability depends upon the facts of each case. *Parkhill*, 188 F.R.D. at 337. Defendant argues in a footnote on the last page of its opposition memorandum that "[p]laintiffs assert a class definition that, read literally, would encompass hundreds of thousands of people; however they have failed to show that this class can be identified. There is no evidence that there are a significant number of persons within this proposed class, thus failing to show numerosity." (Def.'s Mem. at 34 n.48.) The Court is not persuaded. Defendant admitted that it sold 626,175 traditional and universal life insurance policies between 1982 and 1999. (*Id.* at 5.) The vanishing premium life insurance policies sold from the mid-to-

late 1980s can be tracked through Defendant's computer system. (*See* Bloodgood Aff. Ex. 66 at 78–79.) Defendant also holds computer records of all life insurance policies that were sold using funds from a prior policy. (*Id.* Ex. 67.) Finally, Defendant has the name and address of every policyholder, and can identify all life insurance contracts by policy type that it has sold since 1917. (*Id.* Ex. 68.) Accordingly, the Court accords little weight to Defendant's argument that potential class members cannot be identified, and finds that Plaintiffs have satisfied the numerosity requirement, as it would doubtless be impractical to join such a substantial number of people in a single non-class action lawsuit.

### 2. *Commonality*

■ Commonality exists when the legal question linking the class members is "substantially related to the resolution of the litigation." *Parkhill,* 188 F.R.D. at 337 (citation omitted). Defendant argues that "any common issues are dwarfed by individual factual and legal issues, and commonality is discussed in the predominance argument [of Rule 23(b)(3)] in the interest of brevity." (Def.'s Mem. at 34 n.48.) Although Plaintiffs must demonstrate that there are questions of law or fact common to the class, they need not show that all questions raised by the dispute are common. *Parkhill,* 188 F.R.D. at 338. Indeed, individual class members need not be identically situated to meet the commonality requirement. *Id.* In this case, Plaintiffs have set forth several common questions of fact and law sufficient to meet this requirement. For example, the central and uniform inquiry in this case is whether Defendant, through misleading products and illustrations it provided to its sales force, engaged in a fraudulent scheme to market and sell vanishing premium life insurance policies. (Pls.' Mem. at 21.) To the extent that Defendant challenges commonality on the basis that individual questions predominate, the Court will address that issue in its Rule 23(b)(3) analysis.

### 3. *Typicality*

■ With respect to the typicality requirement, Plaintiffs must show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Typicality analysis is closely related to the commonality and adequacy inquiries of Rule 23(a)(2) and (4). *See Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 830 (8th Cir.1977). In an effort to give the typicality requirement independent meaning, however, the Eighth Circuit has incorporated a quantitative aspect into typicality analysis that "requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Donaldson,* 554 F.2d at 829–30. Factual variations will not necessarily preclude certification if "the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir.1996).

Here, Named Plaintiffs argue that they are similar to each other and to the rest of the class because they each purchased the insurance policies without knowing that the policies and illustrations used to sell those policies were inherently misleading. The Named Plaintiffs also assert that each received a written sales illustration, developed and controlled by Defendant's home office, that indicated that the obligation to pay premiums would vanish after a certain number of years. Defendant responds that Plaintiffs' unique claims and Defendant's unique defenses to those claims render the Named Plaintiffs atypical of the class they purport to represent. Defendant essentially argues that each Plaintiff's claim rests on the individual representations made by the thousands of district representatives in selling the insurance policies, and the ways in which each Plaintiff relied on those representations.

However, as with the issue of commonality, Defendant's arguments are more relevant to the Court's Rule 23(b)(3) analysis. *See Parkhill,* 188 F.R.D. at 338. Indeed, "[t]he burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 562

(8th Cir.1982). "Even if the class members' claims involved substantially different factual circumstances from one another, the strong similarity of legal theories from one member's claim to another would be sufficient to satisfy the typicality requirement." *Hartford,* 192 F.R.D. at 603. Consistent with these requirements, the Court concludes that the Named Plaintiffs' claims for statutory fraud and breach of fiduciary duty are typical of those of the remaining members of the proposed class.

### 4. *Adequacy*

■ In order to satisfy the adequacy requirement, Plaintiffs must show that (1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously; and (2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge. *Parkhill,* 188 F.R.D: at 339. Plaintiffs, again, assert that they are adequate representatives because all Plaintiffs bought life insurance policies after being shown Defendant's misleading sales illustrations. (*See* Bloodgood Aff. at Exs. 69–79; Bolkcom Aff. Exs. 2–6, 10.) Plaintiffs assert that they were damaged by Defendant's conduct and therefore all have the same incentive to prosecute Defendant's fraudulent scheme. Defendant challenges the adequacy of Plaintiffs as class representatives, contending that (1) they are not typical representatives, and (2) since commencement of this action, they have "altered their claims and allegations, and jettisoned class representatives ... in an effort to shoehorn their case to fit certification." (Def.'s Mem. at 34.) The Court disagrees. The Named Plaintiffs are adequate representatives and have not "shoehorned" their case, but rather, asserted what could be considered the essence of potential claims against Defendant with respect to the conduct alleged. Furthermore, Plaintiffs' counsel are experienced class action attorneys, willing and able to prosecute this case. Therefore, Plaintiffs have met the adequacy requirement, along with the other Rule 23(a) requirements. Having found that Plaintiffs satisfy the requirements of Rule 23(a), the Court must address whether Plaintiffs satisfy the more arduous requirements of Rule 23(b)(3).

### B. Rule 23(b)(3) Analysis

Where, as here, the Rule 23(a) prerequisites are met, the Named Plaintiffs must then show that the action is maintainable under one of the subsections of Rule 23(b). In this case, Plaintiffs' proposed class is predicated on Rule 23(b)(3). Accordingly, the Court may certify this class only if it finds that "questions of law or fact common to the members of the class predominate over any questions affecting individual members, and that a class action is a superior method to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). In order to determine whether Rule 23(b)(3) is met in this case, the Court must consider the specific legal theories on which Plaintiffs' lawsuit is based.

### 1. *Statutory Consumer Fraud*

■ Plaintiffs allege that Defendant's conduct violates Minnesota's Prevention of Consumer Fraud Act, Minn.Stat. § 325F.69, subd. 1, which prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." Plaintiffs contend that Defendant's use of the vanishing premium policies and the sales illustrations that projected interest rates over a twenty-year period to create the illusion that policyholders' obligation to pay out-of-pocket premiums would end on the "vanish date" calculated in the illustration, constitutes statutory fraud under this statute. Plaintiffs present evidence that Defendant's sales representatives could use only illustrations and material approved by the home office in their sales presentations. Plaintiffs provide additional evidence to demonstrate that Defendant knew that these illustrations and material had the potential to mislead its members and the policies were in fact underfunded and in danger of lapsing.

In this case, the parties' primary dispute with respect to predominance centers on whether individual issues of reliance and causation defeat the requirements of Rule 23(b)(3). Defendant argues that Plaintiffs must prove individual reliance on the alleged wrongful conduct in order to maintain the fraud claim. Defendant contends, therefore, that too many questions with respect to individual class members predominate over common class questions because Plaintiffs can offer no uniform theory of causation. Defendant argues that all of its illustrations contained the appropriate disclosures, and therefore, were not misleading. Defendant also contends that although it provided the illustrations to its district representatives, it did not require its representatives to use the illustrations or to adhere to any sales script in their sales presentations, and therefore, there can be no proof of uniform reliance by Plaintiffs. (Defs.' Mem. at 19–22.) Finally, Defendant contends that some of the Named Plaintiffs have admitted that they did not receive or rely on the illustrations.

In *Parkhill*, 188 F.R.D. 332, and *Hartford*, 192 F.R.D. 592, this Court directly addressed this issue in its Rule 23(b)(3) analysis of vanishing premium insurance cases similar to this case.[1] In *Parkhill*, Plaintiffs brought breach of contract and statutory fraud claims against the Defendant insurance company. 188 F.R.D. at 332. Plaintiffs asserted that Defendant, in a fraudulent and deceptive sales scheme in the marketing and sale of vanishing premium insurance policies, misrepresented how interest would be calculated on premium payments. Defendant presented evidence that the marketing material provided to individual sales agents was not used uniformly. The Court determined that individual reliance was central to the breach of contract issue and that the Court would be required to conduct individual inquiry into the content of each sales presentation. *Id.* at 341. With respect to the plaintiff's statutory fraud claims, the Court concluded that because the plaintiffs sought damages rather than injunctive relief, they must demonstrate individual reliance upon representations made by the defendant in order to prevail. *Id.* at 345. Accordingly, the Court concluded that individual questions of reliance predominated, thereby precluding class certification. *Id.*

Similarly, in *Hartford*, the plaintiffs alleged that the defendant insurance company "orchestrated a nationwide deceptive marketing campaign, and generated documents for distribution to its agents," which showed accumulation of funds based on interest rates that were unrealistically high. 192 F.R.D. at 604. The defendant denied that they had uniform scripts, marketing, or presentation materials. Rather, the defendant argued that the plaintiffs relied on the representa-

---

1. Defendant argues that "constitutional impediments and public policy concerns preclude the Court from applying Minnesota law to a nationwide class." (Defs.' Mem. at 26 citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) (concluding that Kansas law was not applicable to claims of all class members)).) The Court fails to see how Defendant's argument applies to Plaintiffs' claims for fraud under Minnesota's consumer protection statute. Minnesota Statute § 8.31, subd. 3a, expressly authorizes private actions for violations of Minn.Stat. § 325F.69, subd. 1, and broadly permits "any person" injured for such violations to bring suit to recover damages. *See Group Health*, 621 N.W.2d at 8. Plaintiffs here meet this definition of "any person."

Furthermore, it is not fundamentally unfair to apply Minnesota's statutes. In order for a "State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor

fundamentally unfair." *Phillips Petroleum*, 472 U.S. at 818, 105 S.Ct. 2965 (citing *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312–13, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981)). This case does not present a situation in which the parties have no apparent connection to Minnesota. 472 U.S. at 814, 105 S.Ct. 2965 (finding Kansas law inapplicable to every claim, in case in which the defendant was a Delaware corporation with its principal place of business in Oklahoma, when "over 99% of the gas leases and some 97% of the plaintiffs in the case had no apparent connection to...Kansas".) Here, Defendant is organized under the laws of the State of Minnesota, and Defendant is headquartered in Minnesota. Additionally, according to Plaintiffs, much of the conduct relevant to the statutory consumer fraud claim occurred in or emanated from Minnesota. Finally, the insurance policies at issue in this case issued from and were ultimately accepted in Minnesota. Accordingly, Minnesota has a significant interest in this litigation, and the application of Minnesota law does not offend public policy.

tions of individual sales agents with whom each of them dealt. *Id.* at 605. The Court concluded that it would be "virtually impossible" and "certainly impracticable" to resolve questions of individual reliance on a class-wide basis, and therefore, found class adjudication untenable. *Id.* Significantly, the Court noted that its holding applied to Plaintiff's common-law claims, but suggested that some disagreement existed over whether it applied to the statutory consumer fraud claims. *Id.* at n. 13.

Although the *Parkhill* and *Hartford* cases alone would appear to resolve the parties' dispute, the Minnesota Supreme Court in *Group Health Plan, Inc. v. Philip Morris, Inc.*, 621 N.W.2d 2 (Minn.2001), recently broadened the scope of statutory claims under Minnesota's consumer protection statutes.[2] The unusual tradition of Minnesota's consumer protection statutes has been noted by other courts. Indeed, in noting the unusual breadth of Minnesota's consumer protection statutes, Judge Easterbrook commented that "Minnesota is an outlier with respect to suits by remotely affected persons." *Int'l Brotherhood of Teamsters v. Philip Morris, Inc.*, 196 F.3d 818, 827 (7th Cir.1999). Of relevance here, the court in *Group Health* addressed whether a plaintiff must plead and prove reliance on a defendant's alleged misrepresentations in order to recover damages under Minnesota's consumer protection statutes. *Id.* at 11. As noted above, this Court in *Parkhill* answered that question in the affirmative with respect to plaintiffs who seek damages rather than injunctive relief. *See* 188 F.R.D. at 345.

Plaintiffs argue that the *Group Health* decision "relaxes" what evidence is required to demonstrate causation and reliance, and that proof of individual reliance is not necessary when suing under Minnesota's consumer protection statutes. Defendant argues that the *Group Health* decision still requires Plaintiffs to prove causation, and practically speaking, individual reliance. Moreover, at the hearing on this motion, Defendant argued that the "relaxed" causation standard articulated in *Group Health* is not applicable to class action lawsuits generally, and to this class action in particular. Defendant bases its argument on the fact that the plaintiffs in *Group Health* were various Health Maintenance Organizations (HMOs) who sued tobacco companies for, among other things, violations of Minnesota's consumer protection statutes. Defendant asserts that the *Group Health* decision relaxed the causation and reliance standard in that case only because individual purchasers of Defendant's products—the cigarette smokers themselves—were not actual parties in the lawsuit. By contrast, Plaintiffs in this case are the individual purchasers of Defendant's life insurance policies who would ultimately undergo cross examination at trial.

The Court does not agree with Defendant that *Group Health* is not applicable to class claims. Rather, the Court finds that in the most basic sense, the present case is very similar to the claims against tobacco companies in *Group Health*. The court relaxed the causation requirement in that case because the plaintiffs essentially alleged that the defendants' conduct amounted to blanket fraud: that their damages were caused by "a lengthy course of prohibited conduct that affected a large number of consumers." 621 N.W.2d at 14; *see also State by Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490 (Minn. 1996). Plaintiffs in this case have alleged essentially the same type of widespread fraud: that since 1982, Lutheran Brotherhood (1) marketed and sold the vanishing premium life insurance policies using illustrations that reflected an unrealistically high interest, which in turn, lead consumers to believe that their obligations to pay premiums would vanish; and (2) continued to market and sell the vanishing premium insurance policies even after they knew that the policies were underfunded and in danger of lapsing.

The Court turns to the *Group Health* decision itself in order to address the parties remaining arguments with respect to predominance. In *Group Health*, the court concluded that a victim's actual reliance upon fraudulent conduct is not a necessary element for asserting a violation of Minnesota's consumer protection statute. *Id.* at 12–13 ("it is not necessary to plead individual con-

---

2. Specifically, Minn.Stat. §§ 325F.67, 325F.69, subd. 1, 325D.13, and 8.31, subd. 3a.

sumer reliance on the defendant's wrongful conduct to state a claim for damages...."). Instead, a plaintiff must plead only that the defendant engaged in prohibited conduct and the plaintiff was damaged. *Id.* at 12.

In this case, Plaintiffs have met this pleading requirement by alleging that they were harmed by Defendant's misleading illustrations regarding rates of return, which indicated that the policyholder's obligation to pay premiums would "vanish" in the future. Plaintiffs allege that Defendant knew that the illustrations were based on hypothetical rates of return and would mislead members. Plaintiffs also allege that Defendant offered the vanishing premium life insurance policies to its members, knowing that these policies were underfunded and in danger of lapsing. Finally, Plaintiffs allege that they are damaged because the policies they purchased have diminished in value, lapsed, or are in danger of lapsing.

The critical question then becomes whether Plaintiffs can establish the causal nexus between Defendant's alleged fraud and Plaintiff's injury without requiring the testimony of each Plaintiff, named or otherwise. In discussing what evidence is required to prove causation, the Minnesota Supreme Court explained that although individual reliance need not be established, causation remains an element of statutory fraud claims. Initially, in a somewhat confusing fashion, the court found that a plaintiff must prove reliance on the alleged misleading statement or conduct:

> where, as here, the plaintiffs allege that their damages were caused by deceptive, misleading, or fraudulent statements or conduct in violation of the misrepresentation in sales laws, as a practical matter it is not possible that the damages could be caused by a violation without reliance on the statements or conduct alleged to violate the statutes. Therefore, in a case such as this, it will be necessary to prove reliance on those statements or conduct to satisfy the causation requirement.

*Id.*

Significantly, however, the court did not end the discussion there. Rather, it addressed how a plaintiff might prove reliance or causation. The court determined that the damages provision of the consumer fraud statute does not require "a strict showing of direct causation, as would be required at common law." *Id.* "[T]he statute requires that there must be some 'legal nexus' between the injury and the defendants' wrongful conduct." *Id.* The court continued:

> in cases such as this, where the plaintiffs' damages are alleged to be caused by a lengthy course of prohibited conduct that affected a large number of consumers, the showing of reliance that must be made to prove a causal nexus need not include direct evidence of reliance by individual consumers of defendants' products.

*Id.* Clearly, proof of individual reliance is not required: "we are confident that the legislature would not have authorized private damages actions such as this, where the alleged misrepresentations are claimed to have affected a large number of consumers, while retaining a strict burden of proof that depends on evidence of individual consumer reliance." *Id.* at 15. More importantly, the Minnesota Supreme Court specifically rejected the view expressed in *Parkhill* that Minnesota's "misrepresentation in sales laws require proof of individual reliance in all actions seeking damages." *Id.* at 14. The court reasoned that "[t]o impose a requirement of proof of individual reliance in the guise of causation would reinstate the strict common law reliance standard that we have concluded the legislature meant to lower for these statutory actions." *Id.* For all of these reasons, the Court concludes that *Group Health* is clear in that Plaintiffs here need not prove individual consumer reliance in order to maintain their statutory fraud claims.

Nevertheless, the Court must determine whether Plaintiffs can met *Group Health's* causal nexus standard without requiring individualized inquiries of each Plaintiff. According to *Group Health*, "the causal nexus and its reliance component may be established by other direct or circumstantial evidence that the district court determines is relevant and probative as to the relationship between the claimed damages and the alleged prohibited conduct." *Id.* at 14 n. 9 (citing *LensCrafters, Inc. v. Vision World,*

*Inc.*, 943 F.Supp. 1481, 1489 (D.Minn.1996) (involving Lanham Act claim in which actual consumer confusion could be proven through use of consumer testimony, consumer surveys, consumer reaction tests, or market research).) Based on *Group Health*, Plaintiffs may present other direct or circumstantial evidence to demonstrate the causal nexus between Defendant's alleged conduct and Plaintiff's claimed damages without resorting to questions of Plaintiffs' individual reliance. Contrary to Defendant's assertion otherwise, at this time, there is no conclusive evidence that any Named Plaintiff did not rely on Defendant's illustrations in deciding whether to purchase a vanishing premium insurance policy.[3] Moreover, although Plaintiffs here have presented evidence in an attempt to demonstrate that the causal nexus exists, further consideration of this evidence is more appropriately reserved for summary judgment.

Turning to the final Rule 23(b) requirement, Defendant challenges the superiority of litigating this claim as a class action on the basis that individual questions regarding causation, reliance, and applicable state law would make class litigation unmanageable. Having resolved these issues in Plaintiff's favor, the Court concludes that class certification on the statutory fraud issue will not be unmanageable, but rather, is a superior method of proceeding in this litigation. Accordingly, the Court will certify the class on Plaintiff's statutory fraud claim.

### 2. *Breach of Fiduciary Duty*

■ Plaintiffs also request class certification on their two counts for breach of fiduciary duty. As a general matter, to state a claim for breach of fiduciary duty, a plaintiff must allege duty, breach of that duty, causation, and damages. *Conwed Corp. v. Employers Reinsurance Corp.*, 816 F.Supp. 1360, 1362 n. 3 (D.Minn.1993). In Count

Three, Plaintiffs allege that "Lutheran Brotherhood had a duty to provide complete and truthful information to Plaintiffs and Class Members when selling the policies, including, but not limited to, full disclosure and curing any prior misrepresentations or omissions." (Am.Compl. ¶ 134.) In Count Four, Plaintiffs allege that:

> This Count [for breach of fiduciary duty: the underfunded contract project] is brought on behalf of the Plaintiffs and Class Members identified by Lutheran Brotherhood on its underfunded contract list, sometimes referred to as the "X–170 List" . . .

> Lutheran Brotherhood owed the Plaintiffs and Class Members the highest fiduciary duties, including a duty of good faith, a duty of full disclosure, a duty of loyalty and a duty of care arising out of its relationship with Plaintiffs and Class Members and under the circumstances alleged herein . . .

> Lutheran Brotherhood intentionally and/or negligently breached these duties through its underfunded contract project . . .

> In its underfunded contract project, Lutheran Brotherhood identified and generated a list of policyholders whose policies, due to Lutheran Brotherhood's fraudulent scheme, Lutheran Brotherhood knew to be in jeopardy of failing or self-destructing. Despite its duties of good faith, full disclosure, loyalty and care, Lutheran Brotherhood did not notify the policyholders on the list about their troubled contracts and about the true reasons that their policies were underfunded and in danger of self destructing. Instead, Lutheran Brotherhood targeted the owners of underfunded contracts as additional sales prospects . . .

> As a result of Lutheran Brotherhood's breach of fiduciary duty, Plaintiffs and Class Members who were identified on Defendant's underfunded contract list have

---

**3.** Named Plaintiff Wesley Paulsen testified that he did not "recall" the illustration (*See* Bolkcom Aff. Ex. 12 at 41), Named Plaintiff Clark Morphew testified that he was "not sure" that the illustration effected his decision to purchase a policy (*Id.*, Ex. 13 at 106), and Named Plaintiff Gerald Zimmerman simply does not remember any written document that might have influenced

his decision (*Id.* Ex. 22 at 137). Further testimony of these Plaintiffs render their statements even more ambiguous on this subject. (*See* Bloodgood Aff. Exs. 81 at 28, 103; 82 at 25–26; 75 at 22–24.) Defendant's interpretation of the testimony is far too attenuated to deny class certification on this basis.

# 465

been irreparably harmed and are entitled to damages and/or equitable relief as may be determined at trial.

(Am.Compl. ¶¶ 138–42.)

█ Defendant argues that it does not have a fiduciary duty to the insured. Defendant also argues that individual questions predominate this issue, thereby precluding class certification. In response, Plaintiffs argue that Defendant owed a fiduciary duty to them, because each of Defendant's representatives is required to sign an annual fiduciary responsibility statement, acknowledging a higher standard of conduct in the sale of insurance "than that prevailing in the marketplace." (*See* Bloodgood Aff. at Exs. 6–7.) Plaintiffs also assert that the existence of a fiduciary relationship is a question of fact. Plaintiffs argue that Defendant has a fiduciary duty to its members in this case because Defendant is a faith-based organization founded on "trust." Nevertheless, the Court need not decide whether such a fiduciary relationship exists at this time because the parties' present dispute can be resolved even assuming that a fiduciary relationship exists. Although the *Group Health* decision dictates a relaxed position with regard to the evidence necessary to plead and prove causation for fraud claims under Minnesota's consumer protection statutes, that decision does not affect the analysis of common law causes of action. Plaintiffs' claims for breach of fiduciary duty hinge on the representations and omissions made to each individual plaintiff. (*See* Am. Compl. ¶¶ 134, 139, 141.) This Court's decisions in *Parkhill* and *Hartford* instruct that even if Defendant and its representatives owed Plaintiffs a fiduciary duty, a showing of breach and causation still requires individual inquiry. *Parkhill*, 188 F.R.D. at 340–44; *Hartford*, 192 F.R.D. at 605–07. Accordingly, because individual rather than common questions predominate the breach of fiduciary duty claims, class certification is denied on this issue.

## CONCLUSION

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Class Certification (Clerk Doc. No. 82) is **GRANTED IN PART** and **DENIED IN PART**;

2. Plaintiff's Motion is **GRANTED** as to Count One of the Amended Complaint;

3. The Court certifies a limited class to maintain a claim for violations of Minnesota's Prevention of Consumer Fraud Act, which class is limited to persons to whom, between January 1, 1982, and the present, Lutheran Brotherhood sold a life insurance policy through the use of a payment method under which, or written illustrations which projected that, the obligation to pay for any portion of the policy would vanish or be offset by using dividend and/or interest, or cash value from the policy being purchased or any previously policy owned or in force; and

4. Plaintiff's Motion is **DENIED** as to Counts Three and Four, and therefore, Plaintiffs may not maintain the breach of fiduciary duty claims as a class.